# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-0096

State of Minnesota,
Respondent,

vs.

Dominic Jason Allen Sam,
Appellant.

**Filed February 17, 2015**
**Reversed**
**Rodenberg, Judge**

Pine County District Court
File No. 58-CR-13-472

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John K. Carlson, Pine County Attorney, Michelle R. Skubitz, Assistant County Attorney, Pine City, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget Kearns Sabo, Assistant Public Defender, St. Paul, Minnesota; and

Reid J. Golden, Winthrop & Weinstine, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

## S Y L L A B U S

Where proof of an element of a charged offense depends entirely on circumstantial evidence, the district court must apply the two-step *Al-Naseer/Silvernail* analysis in deciding a motion for judgment of acquittal based on a claim of insufficiency of the evidence to support a conviction.

# O P I N I O N

**RODENBERG**, Judge

Appellant challenges the sufficiency of the evidence to convict him of fifth-degree possession of a controlled substance with a firearm enhancement, arguing that the circumstantial evidence of his guilt is consistent with reasonable inferences other than guilt. Appellant also challenges his conviction of possession of a firearm by a prohibited person, which conviction respondent agrees cannot stand. We reverse.

## FACTS

On June 28, 2013, appellant Dominic Jason Allen Sam drove a car belonging to P.M, with R.S. in the front passenger's seat. Appellant drove past State Trooper Marc Hopkins, who decided to check the car's registration. Finding that the car had expired license plates and that its owner had a suspended driver's license, Trooper Hopkins followed the car, eventually activating his emergency lights and initiating a traffic stop. As Trooper Hopkins pulled behind the car, he observed the passenger, later identified as R.S., make "a lot of movement towards the center of the vehicle." This movement alerted Trooper Hopkins to the possibility that the passenger in the car may be "hiding drugs, hiding weapons, stolen items[, or a]nything . . . that might be illegal" and caused Trooper Hopkins to approach the car with caution after the traffic stop. Trooper Hopkins testified that he did not see the driver make any movements toward the center console at any point.

Trooper Hopkins approached the driver's side of the car and asked whether either occupant of the car was the registered owner. Each said he did not own the vehicle.

2

Trooper Hopkins asked appellant whether he had a driver's license, and appellant admitted that he did not. Trooper Hopkins ordered appellant out of the vehicle and frisked him for weapons or contraband. None were found. Trooper Hopkins continued to watch appellant and the passenger while he waited for backup.

Within a minute or two of the traffic stop, Deputy Carl Hawkinson arrived to assist Trooper Hopkins. Trooper Hopkins instructed Deputy Hawkinson to watch R.S. while Trooper Hopkins continued his investigation of appellant. Trooper Hopkins asked appellant his name, and appellant recited that his name was "John Marcus Sam," pausing between the first and middle names. Trooper Hopkins warned appellant that he would be arrested if he was lying about his name. After this warning, appellant correctly identified himself as Dominic Jason Allen Sam. Trooper Hopkins confirmed that appellant did not have a valid driver's license.

Trooper Hopkins then turned his attention to R.S. As Trooper Hopkins was speaking with R.S., he observed what he recognized as an open beer bottle between the passenger's seat and the center console of the car. Ordering R.S. out of the car, Trooper Hopkins searched the car's interior, because of R.S.'s earlier movements toward the center console that had given Trooper Hopkins the "instinct" that "if [he] just ended [his] investigation at a beer bottle, [he] could end up shot."

During the search, Trooper Hopkins opened the center console. As he did so, Deputy Hawkinson observed a small baggie containing what he believed to be marijuana, which he then picked up and showed to Trooper Hopkins. Trooper Hopkins then leaned over the center console, reached in, and found a loaded 9mm Baretta handgun beneath a

3

stocking cap. There was a bullet in the Baretta's chamber and the safety mechanism was not engaged.

Deputy Hawkinson continued the search of the car and found a small bag of methamphetamine in the glove compartment along with a scale and some bindles. Neither officer recalls precisely where within the glove compartment the methamphetamine was found. A backpack containing 50 rounds of ammunition suitable for the 9mm Baretta was also found in the back seat of the car. Deputy Hawkinson also searched R.S. and found a small amount of methamphetamine in R.S.'s wallet.

Appellant was charged with fifth degree controlled substance possession in violation of Minn. Stat. § 152.025, subd. 2(a)(1) (2012), with a firearm enhancement (Minn. Stat. § 609.11, subd. 5(a) (2012)); receiving stolen property in violation of Minn. Stat. § 609.53, subd. 1 (2012); being a prohibited person in possession of a firearm in violation of Minn. Stat. § 624.713, subd 1(10)(i) (2012); and giving a false name to a police officer in violation of Minn. Stat. § 609.506, subd. 1 (2012). Before trial, appellant pleaded guilty to giving a false name to a police officer and stipulated that he was ineligible to possess a firearm. After a two-day trial, a jury found appellant guilty of fifth-degree possession of a controlled substance with a firearm enhancement and being a prohibited person in possession of a firearm. The jury acquitted appellant of receiving stolen property.

Appellant moved for a judgment of acquittal after the verdict pursuant to Minn. R. Crim. P. 26.03, subd. 18(3)(a), arguing that there was insufficient circumstantial evidence to convict him of possession of the methamphetamine and the gun. The district court

4

denied the motion. It declined to apply the *Al-Naseer/Silvernail* two-step analysis of the sufficiency of circumstantial evidence. The district court observed that appellant "may prevail on appeal" but "that the heightened review standard is the appellate standard, not the trial court standard." This appeal followed.

## ISSUES

I. On a motion for a judgment for acquittal based on a claim of insufficiency of the evidence, must a district court apply the *Al-Naseer/Silvernail* two-step analysis of the circumstantial evidence?

II. Is the evidence sufficient to support appellant's convictions?

## ANALYSIS

Appellant argues on appeal that the circumstantial evidence is insufficient to prove that he possessed either the handgun or the methamphetamine, and, alternatively, that indefinitely prohibiting a nonviolent felon from possessing a firearm is contrary to the Second Amendment to the United States Constitution. Because the record establishes, and the state concedes, that, despite the stipulation before the district court, appellant was not a prohibited person ineligible to possess a firearm, and because the state failed to prove beyond a reasonable doubt that appellant constructively possessed the methamphetamine in the car, we reverse both convictions.

## I.

We review the sufficiency of the state's circumstantial evidence de novo. *State v. McCormick*, 835 N.W.2d 498, 506 (Minn. App. 2013), *review denied* (Minn. Oct. 15, 2013). Because our standard of review is de novo, a district court's ruling on a motion

5

for a judgment of acquittal would typically be of little significance on appeal. But here, the district court's uncertainty concerning the rule of law applicable to a motion for judgment of acquittal makes further discussion and clarification appropriate.[1]

After the guilty verdict, appellant moved the district court for a judgment of acquittal pursuant to Minn. R. Crim. P. 26.03, subd. 18(3)(a). The district court denied the motion, stating that the heightened standard of review required by *Al-Naseer* is "based on the standard of review for the appellate court [and] may prevail on appeal," and "that the heightened review standard is the appellate standard, not the trial court standard." In this, the district court erred.[2]

"A motion for acquittal is procedurally equivalent to a motion for a directed verdict." *State v. Slaughter*, 691 N.W.2d 70, 74 (Minn. 2005); *see also McCormick*, 835 N.W.2d at 506. A motion for judgment of acquittal presents the district court with a question of law. *See McCormick*, 835 N.W.2d at 506. In *Slaughter*, the Minnesota

---

[1] At oral argument, counsel for the state also requested that we clarify the correct analysis to be employed by a district court presented with a motion for judgment of acquittal in a case involving circumstantial evidence. Counsel for the state advised the panel that the district court's uncertainty concerning the proper analysis has been expressed by other district courts.

[2] In ruling on the motion, the district court discussed whether a jury instruction may properly be given explaining the limitations on the use of circumstantial evidence. While the district court correctly recognized that several Minnesota appellate opinions have commented about the efficacy of incorporating the *Al-Naseer* and *Silvernail* analysis into jury instructions, *see State v. Andersen*, 784 N.W.2d 320, 340 (Minn. 2010) (Meyer, J., concurring and writing for three justices); *State v. Tscheu*, 758 N.W.2d 849, 871 (Minn. 2008) (Meyer, J. concurring); *McCormick*, 835 N.W.2d at 505 n.2, appellant did not argue to the district court, and does not argue on appeal, that the jury instructions were erroneous or insufficient. The absence of a jury instruction concerning the limitations on the use of circumstantial evidence elevates the importance of the district court's proper evaluation of a motion for judgment of acquittal in circumstances such as are present here.

Supreme Court explained the appropriate standard of review a district court should use when presented with a motion for judgment of acquittal. 691 N.W.2d at 75. It held that a district court may deny such a motion if "the state's evidence, when viewed in the light most favorable to the state, was sufficient to sustain a conviction." *Id.* This standard is the same standard an appellate court applies when reviewing a challenge to the sufficiency of the evidence. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989) ("Where there is a challenge to the sufficiency of the evidence, our review on appeal is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did.").

In the circumstantial evidence context, the Minnesota Supreme Court has repeatedly held that when the state's case is based largely, or entirely, on circumstantial evidence, there is sufficient evidence to sustain a conviction if and only if "no other reasonable, rational inferences [exist] that are inconsistent with guilt." *State v. Al-Naseer*, 788 N.W.2d 469, 474 (Minn. 2010); *see also State v. Silvernail*, 831 N.W.2d 594, 599 (Minn. 2013). Said another way, when reasonable or rational inferences exist which are inconsistent with guilt, the state has not presented sufficient evidence as a matter of law.

As in the direct-evidence context, when a district court considers a motion for judgment of acquittal, it must apply the same standard appellate courts use to review challenges to sufficiency of the evidence. *See Slaughter*, 691 N.W.2d at 75; *Webb*, 440 N.W.2d at 430. Here, the district court was required to apply the *Al-Naseer/Silvernail*

7

analysis when presented with a motion for judgment of acquittal because the state's case rests largely or entirely on circumstantial evidence. *Silvernail*, 831 N.W.2d at 598-99; *Al-Naseer*, 788 N.W.2d at 473-74; *see also State v. Stein*, 776 N.W.2d 709, 721 (Minn. 2010) (Meyer, J., concurring) (citing 6 Wayne R. LaFave et al., *Criminal Procedure* § 24.6(c) (3d ed. 2007)) (other citations omitted) ("The trial court on a motion for judgment of acquittal, and the appellate court in reviewing the claim on appeal, apply the same basic standard of review.").

From our review of the record, it is clear to us that, had the district court applied the correct standard to appellant's motion for judgment of acquittal, it would have granted that motion, as discussed in part II.B. below.

## II.

### A.     Conviction for possession of a firearm by a prohibited person

We first address appellant's conviction for possession of a firearm by a prohibited person. Appellant challenges the conviction on constitutional grounds, but the state concedes that appellant was not prohibited from possessing a firearm as of June 28, 2013.

"When a person has been deprived of civil rights by reason of conviction of a crime and is thereafter discharged, such discharge shall restore the person to all civil rights and to full citizenship." Minn. Stat. § 609.165, subd. 1 (2014). In April 2007, appellant was convicted of escape from custody, a felony, in violation of Minn. Stat. § 609.485, subd. 4(a)(1) (2006). The statute under which appellant was charged in this case, Minn. Stat. § 624.713, subd. 1(10)(i), defines an ineligible person as "a person who has been convicted . . . of a crime punishable by imprisonment for a term exceeding one

8

year." However, excluded from the definition of "crime[s] punishable by imprisonment for a term exceeding one year" are those convictions after which the defendant has been discharged and restored to his full civil rights under Minn. Stat. § 609.165, subd. 1, unless the conviction was "of a crime of violence as defined in section 624.712." Minn. Stat. § 609.165, subd. 1a. The state conceded in its brief that appellant was restored to his full civil rights pursuant to § 609.165, subd. 1, before June 28, 2013. At oral argument, the state requested that the firearm-possession conviction be vacated. The state agrees that, because the record establishes that appellant had been restored to his full civil rights before the date of his arrest, his conviction under section 624.713, subdivision 1(10)(i) cannot stand as appellant was not an ineligible person at the relevant time. *See State v. Boldman*, 813 N.W.2d 102, 106 (Minn. 2012) (vacating appellant's conviction because the state conceded that the appellant should not have been charged and the record supported that concession).

We are mindful that, at trial, appellant stipulated that he was an ineligible person. But the record does not support this stipulation and admits of no other conclusion than that appellant had been restored to his full civil rights. Therefore, the conviction under Minn. Stat. § 624.713, subd. 1(10)(i) must be reversed as unsupported by the evidence. Because we reverse appellant's conviction on this ground, we do not consider appellant's additional arguments relative to this conviction.

### B. Conviction for possession of methamphetamine

We next turn to appellant's conviction for possession of methamphetamine with a firearm enhancement and whether the evidence is sufficient to support that conviction.

9

When reviewing the sufficiency of the evidence, we thoroughly review the record to determine whether the evidence establishes guilt beyond a reasonable doubt. *Al-Naseer*, 788 N.W.2d at 473. A guilty verdict will be upheld when the jury could reasonably find the defendant guilty, "giving due regard to the presumption of innocence and to the state's burden of proof beyond a reasonable doubt." *Id.* (quotation omitted).

There is no direct evidence of appellant having actually possessed either the methamphetamine or the 9mm Baretta in this case. Methamphetamine was found in the glove compartment of the car owned by P.M. and driven by appellant.[3] The gun was found in the center console of the car that appellant was driving.

The state's contention that appellant possessed the methamphetamine and the gun rests entirely on circumstantial evidence that appellant constructively possessed the drugs and the gun.[4] *See State v. Florine*, 303 Minn. 103, 104-05, 226 N.W.2d 609, 610 (1975) (holding that the state must prove possession through constructive possession when "the state cannot prove actual or physical possession at the time of arrest but where the inference is strong that the defendant at one time physically possessed [contraband] and did not abandon . . . possessory interest in the [contraband] but rather continued to

---

[3] There also was methamphetamine found in R.S.'s wallet, which was, in turn, found on his person. The state does not argue on appeal that appellant possessed the methamphetamine in R.S.'s wallet, and the record would not support such an argument in any event.

[4] The state argued in summation that the jury could infer that "when someone drives a motor vehicle . . . it follows from that that they are in possession of the items that are in that vehicle." While Minn. Stat. § 152.028 (2014) permits the inference that a driver has knowing possession of everything in the vehicle, it does not negate other reasonable inferences. Therefore, the permissive inference in Minn. Stat. § 152.028 does not change our *Al-Naseer/Silvernail* analysis.

exercise dominion and control over it up to the time of the arrest"), *see also State v. Salyers*, ___ N.W.2d ___, ___, 2015 WL 160707, at \*2-3 (Minn. Jan. 14, 2015) (applying the *Florine* standard).

The underlying offense here is possession of methamphetamine, with the firearm possession being an enhancement. *See* Minn. Stat. § 609.11, subd. 5 (mandatory minimum three-year sentence for possession or use of a firearm in a designated offense). We focus our analysis on whether the state's evidence is sufficient to eliminate all reasonable doubt of appellant's constructive possession of the methamphetamine found in the glove compartment of P.M.'s car. *See State v. Gilbert*, 262 N.W.2d 334, 339 (Minn. 1977) (holding that an imposition of the minimum sentence for possession of a firearm in Minn. Stat. § 609.11, subd. 1 (1974) was improper when the defendant had not been convicted of one of the enumerated offenses for which the mandatory minimum could be imposed). And because the methamphetamine was not found on appellant's person, the state must prove constructive possession beyond a reasonable doubt. *See State v. Smith*, 619 N.W.2d 766, 770 (Minn. App. 2000) (stating that to prove actual possession, the state would have needed to show "that appellant physically had the handgun on his person"), *review denied* (Minn. Jan. 16, 2001).

"A conviction based on circumstantial evidence . . . warrants heightened scrutiny." *Id.* While the law does not prefer direct evidence to circumstantial evidence, *see* 10 *Minnesota Practice*, CRIMJIG 3.05 (2014), a conviction based on circumstantial evidence requires that the circumstances proved be consistent with an appellant's guilt and inconsistent with any other rational or reasonable hypothesis, *State v. Clark*, 755

11

N.W.2d 241, 257 (Minn. 2008); *see also Tscheu*, 758 N.W.2d at 857 (emphasizing that the state's evidence need not exclude all inferences other than guilt but must exclude all *reasonable* inferences other than guilt).

To determine whether the circumstances proved are consistent with appellant's guilt and inconsistent with any other reasonable hypothesis, we apply a two-step analysis. *Silvernail*, 831 N.W.2d at 598. First, we determine the circumstances proved, giving due deference to the fact-finder and construing the evidence in the light most favorable to the verdict. *Id.* at 599. Second, we determine whether the circumstances proved are consistent with guilt and inconsistent with any other rational or reasonable hypothesis. *Id.*; *Tscheu*, 758 N.W.2d at 857. This analysis requires that we look at the circumstances proved not as isolated facts but rather as a "complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude . . . any reasonable inference other than guilt." *Al-Naseer*, 788 N.W.2d at 473. This analysis gives "no deference to the fact finder's choice between reasonable inferences." *Silvernail*, 831 N.W.2d at 599 (quotation omitted).

To prove constructive possession, the state must prove either that the methamphetamine was in a place under appellant's exclusive control to which other people do not normally have access, or that there is a strong probability that appellant was, at the time of discovery, consciously exercising dominion and control over the methamphetamine. *See Florine*, 303 Minn. at 105, 226 N.W.2d at 611; *see also Salyers*, 2015 WL 160707, at *3. Here, the state does not argue, and the record does not support, that any methamphetamine was found in a place under appellant's exclusive control. We

therefore consider whether the state proved beyond reasonable doubt that appellant exercised dominion and control over the methamphetamine found in the car's glove compartment. *Cf. State v. Hunter*, ___ N.W.2d ___, ___, 2014 WL 7236909, at *4 (Minn. App. Dec. 22, 2014) (holding that a jury instruction misstated the law when it instructed that a defendant must exercise dominion and control over only the *place* where the contraband is found and stating that the law requires a defendant to have exercised dominion and control over the contraband itself). Proof of constructive possession requires a showing of a "strong probability" of the conscious exercise of dominion and control. *C.I.R. v. Fort*, 479 N.W.2d 43, 46 (Minn. 1992).

"Proximity is an important consideration in assessing constructive possession," and "constructive possession need not be exclusive, but may be shared." *Smith*, 619 N.W.2d at 770. However, "[b]ecause [appellant] did not have exclusive possession of the automobile, one [cannot] automatically infer from the mere fact that [drugs were] found in the automobile that [those items] belonged to [appellant]." *Florine*, 303 Minn. at 105, 226 N.W.2d at 611, *see also Hunter*, 2014 WL 7236909, at *4.

When taken in the light most favorable to the state, the evidence proves the following circumstances: The car driven by appellant had expired license plates and belonged to P.M., who had a suspended driver's license; appellant had no valid driver's license; when Trooper Hopkins stopped the car, appellant was driving, R.S. was in the passenger's seat, and R.S. was observed by Trooper Hopkins making "a lot" of movement toward the center of the car; appellant made no movements toward the center of the car; appellant initially gave Trooper Hopkins a false name and, on further

questioning, told Trooper Hopkins his true and correct name; there was an open bottle of beer between R.S.'s seat and the center console; there was what officers believed to be a baggie of marijuana and a stolen handgun in the car's center console; ammunition for the handgun was found in a backpack in the back seat; methamphetamine was found in the glove compartment directly in front of the passenger's front seat of the vehicle and R.S. had methamphetamine in his wallet; appellant had no drugs or illegal paraphernalia on his person.

Having established the circumstances proved, we next consider whether those circumstances are consistent with guilt and inconsistent with any rational hypothesis other than guilt. *Silvernail*, 831 N.W.2d at 599. Appellant argues that a reasonable conclusion from the circumstances proved is that either P.M. or R.S. placed, or left behind, the items in the car's glove compartment. The state responds that it is not reasonable to conclude that R.S. placed the items in the vehicle because: (1) appellant borrowed the vehicle from P.M. and was driving it, (2) it would have been unreasonable for the passenger to spread his belongings throughout the vehicle and, it is therefore, unreasonable to conclude that R.S., the passenger, solely possessed all of those items, (3) it is unreasonable to believe that R.S. had time to hide the beer and the gun in the 30 seconds it took Trooper Hopkins to complete the traffic stop, and (4) it is unreasonable to believe that R.S. would have hid the gun under a ski mask but left a baggie of marijuana on top of the ski mask.

The Minnesota Supreme Court has held that, when an appellant does not have exclusive possession of an automobile, it is unreasonable to "automatically infer from the

14

mere fact that [contraband is] found in the automobile that the [contraband] belonged to [appellant]." *Florine*, 303 Minn. at 105, 226 N.W.2d at 611. And we recently held that the state must prove that a defendant exercised dominion and control over the *contraband*, not merely the place where the contraband is located. *Hunter*, 2014 WL 7236909, at *4. Proof that appellant was driving P.M.'s car is not sufficient to prove appellant's exercise of dominion and control over the drugs and the gun found therein.

The remaining arguments of the state concern which inferences from the circumstantial evidence are *most* reasonable. But under *Silvernail*, the second step of the circumstantial-evidence analysis requires "no deference to the fact finder's choice between reasonable inferences." 831 N.W.2d at 599. Our task, and the task properly to be performed by the district court on a motion for judgment of acquittal, is to determine whether any rational or reasonable inference is inconsistent with guilt. *Id.*; *Al-Naseer*, 788 N.W.2d at 474-75; *Andersen*, 784 N.W.2d at 329-30; *State v. McCormick*, 835 N.W.2d 498, 506 (Minn. App. 2013), *review denied* (Minn. Oct. 15, 2013).

Without speculating about all of the possible ways that the methamphetamine found in the car's glove compartment might have gotten there, it is sufficient to observe that at least two reasonable inferences concerning the methamphetamine in the glove compartment are inconsistent with appellant's guilt. First, the methamphetamine in the glove compartment may have been there when appellant borrowed the car from P.M. The record contains no evidence to negate either this inference or its reasonableness. Second, it is reasonable to infer from the circumstances proved that R.S. may have put the methamphetamine in the glove compartment. He had methamphetamine on his

15

person, while appellant did not. And there is no record evidence to negate this inference nor is there evidence from which to conclude that, if R.S. put the methamphetamine in the glove compartment, appellant knew of that.

The circumstances here are far different from those cases in which Minnesota appellate courts have upheld convictions based on circumstantial evidence of possession of contraband. Unlike here, the record in each of those cases has included evidence tying a defendant directly to the illegal items. Either the items were found in the defendant's home,[5] effects identifying the defendant were found near or on the items,[6] the defendant admitted possession of the items,[7] or there was testimony at trial accusing the defendant of possessing the items.[8] By contrast, no direct evidence tied appellant to possession of

---

[5] *See, e.g.*, *State v. Lorenz*, 368 N.W.2d 284, 287-88 (Minn. 1985) (finding drugs in the defendant's apartment); *State v. Wiley*, 366 N.W.2d 265, 270 (Minn. 1985) (finding drugs in the defendant's home); *State v. Colsch*, 284 N.W.2d 839, 841 (Minn. 1979) (finding drugs in bedroom of defendant's home); *State v. Carr*, 311 Minn. 161, 163, 249 N.W.2d 443, 444 (1976) (finding drugs in the defendant's home); *State v. Wiley*, 295 Minn. 411, 422, 205 N.W.2d 667, 675-76 (1973) (finding drugs in the place where the defendant either lived or spent a lot of time); *State v. Porter*, 674 N.W.2d 424, 427 (Minn. App. 2004) (finding drugs in the defendant's apartment); *State v. Barnes*, 618 N.W.2d 805, 813 (Minn. App. 2000) (finding drugs in the defendant's bedroom), *review denied* (Minn. Jan. 16, 2001).

[6] *See, e.g.*, *Wiley*, 366 N.W.2d at 270 (box containing the marijuana displayed the defendant's name); *Colsch*, 284 N.W.2d at 841 (papers identifying the defendant and the defendant's checkbook found near the drugs); *Carr*, 311 Minn. at 163, 249 N.W.2d at 445 (information identifying the defendant found in the same drawer as the drug paraphernalia); *Wiley*, 295 Minn. at 422, 205 N.W.2d at 675 (drawer where the drugs were found contained items displaying the defendant's name); *Barnes*, 618 N.W.2d at 812-13 (finding the defendant's personal effects near the drugs).

[7] *See, e.g.*, *Lorenz*, 368 N.W.2d at 288 (defendant admitted to the police that he possessed the marijuana and cocaine); *Porter*, 674 N.W.2d at 427 (defendant admitted to the police that the drugs were his).

[8] *See, e.g.*, *State v. Porte*, 832 N.W.2d 303, 308 (Minn. App. 2013) (witness at trial reported that he gave the defendant the drugs).

16

the contraband here. That appellant lied about his name and was driving a vehicle with contraband inside, without more, is insufficient to eliminate all reasonable inferences inconsistent with appellant's guilt.

While the State need not demonstrate that the circumstantial evidence excludes *all* inferences other than guilt, all reasonable inferences from the circumstances proved must be consistent with guilt. *See Tscheu*, 758 N.W.2d at 857. Because there are reasonable inferences from the circumstances proved that are inconsistent with appellant having consciously exercised dominion and control over the methamphetamine found on R.S.'s person and in P.M.'s car, the state did not meet its burden of proving constructive possession in this case.

## D E C I S I O N

The district court erred in declining to apply the two-step *Al-Naseer/Silvernail* analysis to appellant's motion for judgment of an acquittal. Applying that standard, the evidence here is insufficient to support appellant's conviction for possession of a controlled substance with a firearm enhancement. And because the record supports respondent's concession that appellant was not prohibited from possessing a firearm, we reverse appellant's conviction of that offense.

**Reversed.**