*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0228**

State of Minnesota,
Respondent,

vs.

Quentin Lee Davis,
Appellant.

**Filed March 14, 2016
Affirmed
Halbrooks, Judge**

Hennepin County District Court
File No. 27-CR-14-14627

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Debra K. Kovats, Special Assistant Public Defender, St. Louis Park, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Bjorkman, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant challenges his conviction of being an ineligible person in possession of a firearm on three grounds: (1) the district court erred by not sua sponte declaring a mistrial

based on Minn. R. Civ. P. 26.02, subd. 9, when it received information that a juror smelled like alcohol and was disruptive in a restaurant at lunch; (2) the district court erred by not sua sponte immediately excusing a juror who advised it that she was fearful and could no longer be impartial; and (3) the evidence was insufficient to support his conviction. We affirm.

**FACTS**

Shortly before 2:00 a.m. on May 23, 2014, Minneapolis police officers Carlson and Haugland were on patrol when they heard a gunshot. Officer Carlson turned westbound on 25th Avenue North, in the direction of the shot, and Officer Haugland got out and walked alongside the squad car as they approached Aldrich Avenue North. The officers heard three more gunshots when they were less than one-half block away from the intersection of 25th and Aldrich.

Officer Haugland started to run toward the shots. As he approached the intersection, he saw appellant Quentin Davis running across it from north to south and chased him. As he did, he observed four individuals standing near a van that was parked north of the intersection. One of the individuals yelled, "Help, he's got a gun." Officer Haugland saw a maroon Buick parked on the north side of 25th Avenue North peel out and speed away.

Davis ran until he reached a Ford Taurus parked just south of the intersection and attempted to get into the front passenger seat. At the same time, Officer Carlson pulled behind the Taurus and activated the squad car's emergency lights. Officer Carlson got out and ordered Davis to the ground. While Davis did not immediately comply, he eventually

2

did.  Three other people who were in the Taurus got out of the vehicle and also complied with the officer's order to get down on the ground.

After securing the four people, Officer Carlson retraced Davis's steps and found a black semi-automatic handgun in the grass 15 feet from the rear of the Taurus.  The handgun had a small light on it, an empty magazine in it, and a bullet in the chamber.  Davis has a previous conviction of a crime of violence that makes him ineligible to possess a firearm.

The state charged Davis with four counts of second-degree assault with a dangerous weapon and one count of being an ineligible person in possession of a firearm, and a jury trial was held.  Minn. Stat. §§ 609.222, subd. 1, 624.713, subd. 1(2) (2014).  After the state rested, Davis moved for judgment of acquittal.  The district court granted the motion with respect to three of the four assault charges.  The remaining two charges went to the jury.  The jury found Davis guilty of ineligible person in possession of a firearm and not guilty of the remaining count of second-degree assault with a dangerous weapon.  The district court entered judgment of conviction and sentenced Davis to 60 months in prison.  This appeal follows.

**D E C I S I O N**

**I.**

Davis argues that the district court erred by not sua sponte declaring a mistrial when it learned that Juror S.W. may have been intoxicated during deliberations.  Davis argues that the district court violated Minn. R. Crim. P. 26.02, subd. 9, and that he was deprived of a fair trial.  Because Davis did not object to the district court's resolution of this matter,

3

our standard of review is plain error. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998) ("[B]efore an appellate court reviews an un-objected to error, there must be (1) error; (2) that is plain; and (3) the error must affect substantial rights."). Minn. R. Crim. P. 26.02, subd. 9, states in relevant part:

> If a juror becomes unable or disqualified to perform a juror's duties after the jury has retired to consider its verdict, a mistrial must be declared unless the parties agree under Rule 26.01, subd. 1(4) that the jury consist of a lesser number than that selected for the trial.

On the day of closing arguments, Juror S.W. arrived late at the courthouse. The district court waited for Juror S.W. to arrive and then instructed the jury. After closing arguments, the jury began its deliberations around 11:45 a.m. At 2:55 p.m., the parties were brought back before the district court to address a report by the deputy that S.W. had "the odor of alcohol on her breath as she was leaving for lunch." The district court had also been informed that S.W. acted disruptively at lunch and that "the manager of the restaurant where she was at mentioned that he may have been ready to kick her out because she was drunk."

The district court offered to ask S.W. to submit to a test of her alcohol concentration, stating, "I would do that because that is certainly a factor in whether or not the jury can effectively deliberate." Another option suggested to the district court (it is unclear by which party) was to excuse the jury for the day so as not to single out S.W. The district court asked Davis if he understood the options and had a chance to talk with his counsel. He responded that he did. The district court then asked Davis, "[W]hat course of action

4

would you like me to pursue?" Davis asked the district court to excuse the jury for the day.

The district court then told Davis:

> I just need you to understand that by agreeing to that you are giving up any right to challenge, you know, whatever her behavior may have been and the cause of it this morning if this doesn't turn out the way you want it to, so I don't want you to come back and say we should have stopped this proceeding because there was some information that suggested that [S.W.] may be intoxicated to the point where she is not a capable juror. Do you understand that?

Davis responded, "Yes, sir." The district court excused the jury for the day. Juror S.W. arrived on time the following day and participated in deliberations resulting in the verdict.

Davis now argues that Juror S.W. was unable to perform her duties and that a mistrial was required. If a juror is unable to understand the evidence, understand counsels' arguments, understand the district court's instructions, or deliberate with the other members of the jury, she is unable to perform her duties as a juror. *State v. Berrios*, 788 N.W.2d 135, 140 (Minn. App. 2010), *review denied* (Minn. Nov. 16, 2010). In *Berrios*, on the second day of trial, a juror asked the court if she could have a Spanish interpreter. *Id.* at 138. The district court questioned the juror under oath. *Id.* She testified that Spanish was her first language and that she requested an interpreter because she did not understand some of the witnesses' testimony from the previous day. *Id.* Based on the juror's statements to the district court, the prosecutor asked that the juror be removed because she had been unable to understand portions of an entire day of testimony. *Id.* at 139. The district court agreed and excused the juror. *Id.* On appeal, we concluded that the district

5

court properly excused the juror under Minn. R. Crim. P. 26.02, subd. 9, because she was unable to perform her duties as a juror. *Id.* at 140.

Here, the record is thin on S.W.'s capacity to understand the trial or otherwise perform her duties as a juror. The information about S.W.'s possible impairment is limited to the deputy's observation that S.W. had an odor of alcohol on her breath, the report that she was disruptive at lunch, and the restaurant manager's opinion that she was drunk. Neither the deputy nor the restaurant manager was questioned on the record. None of the other jurors was questioned about their observations of S.W. And S.W. was never questioned. There is no indication in the record that counsel, the district court, or any other jurors observed anything about S.W.'s condition that caused concern. Further, when given an opportunity to develop the record by testing S.W.'s alcohol concentration, Davis and his counsel elected not to do so. Because the record does not establish that S.W. was unable to perform her duties as a juror, we cannot conclude that a mistrial was required under Minn. R. Crim. P. 26.02, subd. 9. We therefore conclude that the district court did not err in its resolution of this matter.

In the alternative, Davis argues that allowing S.W. to take part in jury deliberations violated his constitutional right to a fair trial based on the doctrine of implied bias. The implied-bias doctrine is premised on the assumption that "certain relationships or experiences create a mindset that cannot be changed or set aside." *State v. Fraga*, 864 N.W.2d 615, 621 (Minn. 2015) (quotation omitted). Under Minn. R. Crim. P. 26.02, subd. 5(1), a juror is considered biased if, for example, the juror served on the grand jury that found the indictment or served as a juror in any case involving the defendant. Our supreme

court has consistently held that rule 26.02 provides the exclusive grounds to challenge a juror for implied bias. *See id.* at 622-23 (declining to extend the grounds for challenging a juror based on implied bias). Because none of the grounds identified in rule 26.02 applies here, and intoxication goes to capacity rather than partiality, we need not consider this theory.

## II.

Davis argues that the district court erred by not sua sponte immediately excusing a juror who advised the district court early in the trial that she was fearful because she gave identifying personal information during voir dire. Again, because Davis did not object to the district court's resolution of this matter, our standard of review is plain error. *Griller*, 583 N.W.2d at 740.

There are two legal rules relevant to Davis's argument. First, if a juror becomes unable to serve prior to the start of deliberations, then an alternate juror must replace that juror. Minn. R. Crim. P. 26.02, subd. 9. Second, under the United States and Minnesota Constitutions, a person accused of a crime has a right to an impartial and unbiased jury. U.S. Const. amend. VI; Minn. Const. art. 1, § 6.

In this case, Juror E. called the district court over the weekend after the first day of trial. The district court did not speak with her until the following Monday when both counsel were present. Juror E. stated that she did not feel comfortable serving any longer because she had identified her place of employment during voir dire. She stated that she could no longer be impartial because she felt she had an "X" on her back, and she had

7

already made up her mind about whether Davis was guilty. She assured the district court that she had not discussed her position or feelings with the other jurors.

The district court stated, "It's hard to allow [Juror E.] to stay on a jury with that set of statements, but I certainly welcome any thoughts." The prosecutor agreed with the district court. Davis's counsel requested time to think and discuss the situation with Davis before taking a position. The district court deferred to Davis's request and allowed Juror E. to stay on the panel until the noon break. But before allowing Juror E. to return to the other jurors, the district court admonished her not to talk to the other jurors about her concerns, her predisposition, or their conversation.

Juror E. remained on the jury for 41 minutes of additional testimony before the noon break. During the break, the district court expressed its concerns about keeping Juror E. on the jury: "I think the longer we keep her on, the more of a risk there is." The prosecutor agreed. The district court advised counsel that Juror E. would be contacted during the noon break and removed from the jury. Davis did not object.

Davis now argues that Juror E.'s dismissal should have been immediate. But when both the district court and the prosecutor expressed the desire to dismiss Juror E. immediately, it was Davis who requested time to consider what to do. If the delay in dismissing Juror E. was an error, Davis waived review by failing to assert this right in the district court. *See State v. Beaulieu*, 859 N.W.2d 275, 278-79 (Minn. 2015) (explaining the distinction between forfeiture and waiver). Nevertheless, we conclude that the district court did not err by not immediately dismissing Juror E.

We assume jurors follow the district court's instructions. *State v. Vang*, 774 N.W.2d 566, 578 (Minn. 2009). Juror E. told the district court she did not discuss her concerns with the other jurors before she was questioned, and the district court instructed her not to do so after she was questioned. Nothing in the record indicates that Juror E. did not follow the district court's instructions. And Juror E. was removed before deliberations began. We conclude that Juror E.'s private concerns did not deprive Davis of an impartial and unbiased jury.

**III.**

Davis argues that there is insufficient evidence to support his conviction for being an ineligible person in possession of a firearm. When there is a challenge to the sufficiency of the evidence, our review is "limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We apply a heightened scrutiny standard to convictions based on circumstantial evidence. *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013). If, given the circumstances, no reasonable or rational inferences inconsistent with guilt exist, then the evidence is sufficient to sustain a conviction. *State v. Sam*, 859 N.W.2d 825, 831 (Minn. App. 2015). We apply a two-step analysis to determine if any reasonable or rational inferences inconsistent with guilt exist. *Id.* at 833. "First, we determine the circumstances proved, giving due deference to the fact-finder and construing the evidence in the light most favorable to the verdict." *Id.* "Second, we determine whether the

circumstances proved are consistent with guilt and inconsistent with any other rational or reasonable hypothesis." *Id.*

We do not reweigh evidence on appeal. *Porte*, 832 N.W.2d at 308. "We must defer to the jury's assessment of a witness's credibility and we must assume that the jury believed the state's witnesses and disbelieved any evidence to the contrary." *Id.* at 309 (quotation and citations omitted).

There are two elements to an ineligible-person-in-possession-of-a-firearm charge: (1) the person meets the definition of an ineligible person and (2) the person possessed "a pistol or semiautomatic military-style assault weapon or . . . any other firearm." Minn. Stat. § 624.713, subd. 1(2). The first element was satisfied by Davis's stipulation that he is ineligible to possess a firearm. The second element may be proved by actual or constructive possession. *State v. Salyers*, 858 N.W.2d 156, 159 (Minn. 2015). Actual possession involves "direct physical control." *State v. Simon*, 745 N.W.2d 830, 842 (Minn. 2008) (citing *Jacobson v. Aetna Cas. & Sur. Co.*, 233 Minn. 383, 388, 46 N.W.2d 868, 871 (1951)).

Here, the state proved that the officers heard gunshots as they were patrolling less than one-half block from the intersection of 25th Avenue North and Aldrich Avenue North. The officers saw Davis running away from a van across that same intersection. As he ran, Davis held one of his hands down by his side as if he were holding something. As Davis crossed the street, a person near the van yelled, "Help, he's got a gun." At the time, no one else was in the intersection. Officer Haugland chased Davis all the way to the Taurus. After securing Davis, Officer Carlson retraced Davis's steps and found a semi-automatic

10

handgun lying in the grass 15 feet from the rear of the Taurus. The officers did not see anyone else in Davis's path while chasing him.

The supervisor of forensic science from the Minneapolis Crime Lab testified that the van had multiple fresh bullet holes in it and shell casings around it. She also testified that the shell casings "were consistent with having been fired [by the handgun found in the grass]." The only reasonable inference that can be drawn from the circumstances is that Davis physically possessed the firearm and dropped it in the grass as he fled from the officers. We therefore conclude that the evidence was sufficient to sustain Davis's conviction of being an ineligible person in possession of a firearm.

**Affirmed.**