*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0711**

State of Minnesota,
Respondent,

vs.

Carlos Maurice Harris,
Appellant.

**Filed April 11, 2016
Reversed
Jesson, Judge**

Hennepin County District Court
File No. 27-CR-14-10245

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney General, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellant Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Jesson, Judge; and Peterson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JESSON**, Judge

Appellant challenges his conviction for possession of a firearm by an ineligible person, arguing that the evidence is insufficient to prove that he constructively possessed

the firearm. Because we agree with appellant that the evidence is insufficient to support his conviction, we reverse. Appellant also argues that the firearm was discovered as a result of an illegal search. Because our conclusion that the evidence is insufficient disposes of the matter in appellant's favor, we do not reach the search issue.

## FACTS

On March 4, 2014, an investigator with the United States Marshal Task Force received information that Jerrett Anderson was in a silver Cadillac in Minneapolis. Anderson was on intensive supervised release pursuant to a murder conviction. As a result of an alleged violation of the conditions of Anderson's release, a warrant had been issued for his arrest. The investigator located the Cadillac in a parking lot. He noticed that Anderson was in the front passenger seat and that there were two other persons in the Cadillac. Because he had information that Anderson was dangerous, had possessed guns and was a gang member, the investigator requested assistance before stopping the Cadillac.

The investigator was soon joined by multiple Minneapolis police squad cars. The investigator and the other squad cars turned on their lights and sirens in an attempt to stop the Cadillac. The Cadillac continued driving at approximately 30 to 35 miles an hour. The Cadillac slowed down and turned the corner toward a highway entrance ramp. The investigator testified that he "could see movement inside the vehicle" and that in his experience individuals sometimes pass guns around inside of cars. The investigator pulled alongside the Cadillac in an attempt to force the vehicle toward the sidewalk. The Cadillac stopped. The Cadillac traveled approximately three blocks after officers first attempted to make the stop.

2

The investigator ordered the occupants of the Cadillac to raise their hands. The driver, appellant Carlos Harris, complied with the investigator's order. Harris dropped his hands momentarily, but raised them again when commanded to do so by the investigator. Anderson did not comply with the investigator's order to show his hands. Harris and the passenger in the vehicle's back seat followed orders to exit the Cadillac and were placed in handcuffs. Anderson remained in the Cadillac and made several furtive movements. Anderson eventually exited the Cadillac, but he failed to show the officers his hands, was reaching into his pockets, and, at one point, reached back into the vehicle.

Once all three occupants of the Cadillac were secured in the back of squad cars, an officer approached the vehicle on the driver's side to make sure that there were no additional occupants. The front and back driver's side doors were open. After he confirmed that no other persons were in the Cadillac, the officer noticed a pill bottle on the driver's seat. He then looked up and to the right and discovered a firearm tucked into the liner of the sunroof. The liner had been pulled down a few inches, and the gun had been stuffed into the opening at the back of the sunroof. Without manipulating the liner, the officer recognized the butt-end of the gun, the back strap, and the gun's magazine. When he removed the gun, the officer discovered that a round was in the chamber and the hammer was cocked and ready to fire.

None of the three occupants of the Cadillac could be excluded as contributors to DNA found on the gun, although 75.7 percent of the general population could be excluded. Harris told police that the Cadillac belonged to his brother, and police investigation would later confirm that the Cadillac did indeed belong to Harris's brother.

3

Harris was charged with possession of a firearm by an ineligible person in violation of Minn. Stat. § 624.713, subd. 1(2) (2012). At trial, Harris stipulated that he is ineligible to possess a firearm. The jury returned a guilty verdict, and the district court sentenced Harris to 60 months in prison. This appeal follows.

## DECISION

Harris argues that the circumstantial evidence is insufficient to prove that he constructively possessed the firearm. He concedes that the circumstances proved are consistent with guilt but argues that there are reasonable inferences from these circumstances that are inconsistent with guilt. We agree.

"When there is a challenge to the sufficiency of the evidence, our review on appeal is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). In this matter, the parties agree that the evidence establishing possession is circumstantial. A conviction based on circumstantial evidence receives heightened scrutiny. *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013). "[A] conviction based on circumstantial evidence requires that the circumstances proved be consistent with an appellant's guilt and inconsistent with any other rational or reasonable hypothesis." *State v. Sam*, 859 N.W.2d 825, 833 (Minn. App. 2015). We apply a two-step process to assess whether the circumstances proved are consistent with guilt and inconsistent with any other reasonable hypothesis. *Id.* "First, we determine the circumstances proved, giving due deference to the [jury] and construing the evidence in the light most favorable to the verdict." *Id.*

4

"Second, we determine whether the circumstances proved are consistent with guilt and inconsistent with any other rational or reasonable hypothesis." *Id.* In this second step, "we give no deference to the fact finder's choice between reasonable inferences." *Porte*, 832 N.W.2d at 310 (quotation omitted).

To convict Harris of possession of a firearm by an ineligible person, the state had to prove that he knowingly possessed the firearm. *State v. Salyers*, 858 N.W.2d 156, 161 (Minn. 2015). The state does not contend that Harris had the firearm on his person at the time of arrest; therefore, the state was required to prove constructive possession. *Id.* at 159.

To prove constructive possession,

> the [s]tate must show either (1) that the prohibited item was found "in a place under defendant's exclusive control to which other people did not normally have access," or (2) if the prohibited item was found "in a place to which others had access, there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it."

*Id.* (quoting *State v. Florine*, 303 Minn. 103, 105, 226 N.W.2d 609, 611 (1975)). "Proximity is an important factor in establishing constructive possession," and "an item that is constructively possessed may be possessed by more than one person." *Porte*, 832 N.W.2d at 308 (quotation omitted). "An offender who place[s] a firearm where it is discovered has constructive possession of the firearm." *Salcido-Perez v. State*, 615 N.W.2d 846, 846 (Minn. App. 2000), *review denied* (Minn. Sept. 13, 2000).

The evidence is clear that the firearm was found in a place that was not under Harris's exclusive control and to which other people had access. Thus, the state had to prove, under the second prong of the *Florine* test, a "strong probability" that Harris was

5

"consciously exercising dominion and control" over the gun at the time of arrest. *See Florine*, 303 Minn. at 105, 226 N.W.2d at 611.

The circumstances proved include: (1) Anderson had a warrant for his arrest resulting from an alleged violation of his supervised release on a murder conviction; (2) police had information that Anderson had a history of carrying weapons; (3) when police initiated the stop, the Cadillac did not stop immediately but continued driving for approximately three blocks before the investigator pulled his vehicle to the side of the Cadillac to force it toward the curb; (4) the investigator testified that he "could see movement inside the vehicle" and that in his experience individuals sometimes pass guns around in cars; (5) Harris was driving the Cadillac, Anderson was in the front passenger seat, and another individual was in the back of the Cadillac; (6) Harris initially complied with police orders to show his hands; (7) Harris dropped his hands momentarily but raised them again when instructed to do so; (8) Anderson did not comply with police orders to show his hands; (9) Anderson made furtive movements and remained in the vehicle after the other two occupants complied with orders to exit the vehicle; (10) when Anderson did exit the vehicle, he continued to make furtive movements and, at one point, reached back into the vehicle; (11) after all three occupants were secured in squad cars, the officer searched the vehicle and discovered a firearm tucked into the liner of the vehicle's sunroof toward the back of the vehicle; (12) the officer recognized the item as a gun without manipulating the sunroof in any way (13) the firearm was cocked, loaded and ready to fire; (14) pictures taken of the gun's position in the liner of the sunroof before it was removed indicate that all three occupants of the vehicle had access to the firearm; (15) the vehicle

was owned by Harris's brother; (16) and none of the occupants of the vehicle could be excluded as contributing to the DNA on the gun, while 75.7 percent of the general population could be excluded. As Harris concedes, these circumstances are consistent with the jury's conclusion that he consciously exercised dominion and control over the gun by placing it in the sunroof liner or passing it around the car and possessing it jointly with the other occupants of the vehicle.

Harris argues, however, that the circumstances proved are also consistent with a rational hypothesis that his brother, Anderson or the other occupant of the vehicle hid the gun in the sunroof liner without his knowledge. We agree. Minnesota appellate courts have historically upheld "convictions based on circumstantial evidence of possession of contraband" only where the record includes "evidence tying a defendant directly to the illegal items." *Sam*, 859 N.W.2d at 835. "Either the items were found in the defendant's home, effects identifying the defendant were found near or on the items, the defendant admitted possession of the items, or there was testimony at trial accusing the defendant of possessing the items." *Id.* The record in this case does not include any evidence directly tying Harris to the gun.

The fact that Harris was driving the car in which the gun was found, in itself, does not directly connect him to the gun.[1] Under Minnesota law, if a defendant does not have

---

[1] We recognize that Minn. Stat. § 609.672 (2012) permits the inference that the driver or person in control of the vehicle has knowing possession of a firearm found in the vehicle. In *Sam*, we addressed a similar permissive inference statute, Minn. Stat. § 152.028 (2014), which allows the fact-finder to infer that the driver of a vehicle has knowing possession of a controlled substance found in the vehicle. 859 N.W.2d at 832 n.4. We concluded that the permissive inference allowed by section 152.028 "does not negate other reasonable

exclusive possession of a vehicle, proof that he was in control of a vehicle containing contraband is not necessarily sufficient to prove that he constructively possessed the contraband. *Florine*, 303 Minn. at 105, 226 N.W.2d at 611. For instance, in *Sam*, we concluded that "[p]roof that appellant was driving [another person's] car [was] not sufficient to prove appellant's exercise of dominion and control over the drugs and the gun found therein." 859 N.W.2d at 834. Moreover, in *Porte*, we concluded that the district court erred by giving a permissive-inference instruction allowing the jury to find that the defendant constructively possessed cocaine if it found that the defendant was "the driver or in physical control" of the vehicle where the cocaine was found. 832 N.W.2d at 311-12. In summary, Harris must have exercised dominion and control over the firearm itself, not merely the place where the firearm was found. *See State v. Hunter*, 857 N.W.2d 537, 542 (Minn. App. 2014) (stating this rule). Because Harris did not have exclusive possession of the vehicle, possession of the firearm does not necessarily follow from the fact that he was driving the vehicle where the firearm was found.

The state further argues that Harris's failure to stop the vehicle immediately after the officers turned on their lights and sirens shows that he knew the gun was in the Cadillac. Although flight may suggest consciousness of guilt, there are other reasonable explanations for why Harris did not immediately stop the vehicle. Anderson likely believed that, if

---

inferences," and therefore does not affect the sufficiency-of-circumstantial-evidence analysis. *Id.* Likewise, here, the permissive inference allowed by Minn. Stat. § 609.672 does not change our analysis.

apprehended, he could be returned to prison for a long period of time, and Anderson may have urged Harris to flee.

The state also points out that Harris initially complied with police commands to show his hands but then dropped his hands below the window. But Harris immediately re-raised his hands when the investigator told him to do so. Also, the gun was hidden above and behind Harris. There was no allegation that Harris ever reached toward the area of the sunroof liner where the gun was found. Harris was the first occupant removed from the vehicle, and he and the backseat passenger complied with police orders. Anderson, on the other hand, was the last occupant to leave the vehicle and made several furtive movements. Anderson also reached back into the vehicle after he was removed. It is possible that Anderson or the other passenger hid the firearm in the sunroof liner unbeknownst to Harris.

The investigator testified that before the car stopped he saw "movement" in the vehicle. He also testified that in his experience individuals sometimes pass guns around in cars. But the investigator did not specify which individuals were moving in the car or even that he thought their movement was suspicious. He also did not testify that he saw any of the individuals in the vehicle holding an object or moving their hands toward the area of the car where the gun was found.

The state further argues that the gun was "clearly visible" and that it was cocked, loaded, and ready to fire. But the gun was located behind where Harris was sitting. The gun was not so plainly visible that Harris necessarily would have seen it and recognized it as a gun upon entering the car or while driving the vehicle. Although the firearm was found in close proximity to where Harris had been sitting and "[p]roximity is an important factor

9

in establishing constructive possession," *Porte*, 832 N.W.2d at 308 (quotation omitted), proximity is not in itself sufficient. *See State v. Ortega*, 770 N.W.2d 145, 150 (Minn. 2009) (noting that "mere proximity to criminal activity" is insufficient to establish probable cause for arrest for possession of contraband). The state must present some "evidence tying a defendant directly to the illegal items." *Sam*, 859 N.W.2d at 835.

Finally, the state argues that the DNA evidence proves Harris's guilt. But, although the DNA evidence could not exclude Harris or the other two occupants of the vehicle, it also could not exclude nearly a quarter of the general population. The DNA of Harris's brother, who owned the vehicle, was not compared against the DNA found on the gun. A forensic scientist testified that Harris and his brother were more likely to share the DNA tested for than Harris and a random person in the general population. For this reason, if Harris's brother's DNA were in the mixture on the firearm, there would be a higher likelihood that DNA testing could not exclude Harris.

There are rational hypotheses that are inconsistent with guilt. Harris's brother may have left the gun in the vehicle. Anderson or the backseat passenger also may have placed the gun in the sunroof liner without Harris's knowledge. Because there are reasonable inferences that are inconsistent with guilt, the state failed to prove Harris's constructive possession of the firearm beyond a reasonable doubt.

**Reversed.**