STATE of Minnesota, Respondent,

v.

**Scottie Paul SMITH, Appellant.**

No. C3–99–2208.

Court of Appeals of Minnesota.

Nov. 21, 2000.

---

Michael Hatch, Minnesota Attorney General, St. Paul, Amy Klobuchar, Hennepin County Attorney, Mary Martin Lynch, Assistant County Attorney, Minneapolis, for respondent.

John M. Stuart, Minnesota State Public Defender, Scott G. Swanson, Assistant State Public Defender, Minneapolis, for appellant.

Considered and decided by ANDERSON, Presiding Judge, KALITOWSKI, Judge, and SHUMAKER, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellant challenges his conviction for unlawful possession of a firearm, arguing that the evidence was insufficient to support his conviction because he was not conscious when police discovered the firearm near him. Appellant also argues that the prosecutor's closing remarks concerning a fable and appellant's activity the night before his arrest constitute prejudicial misconduct. Because we conclude that the evidence sufficiently supports the conviction and the prosecutor's arguments did not amount to misconduct, we affirm.

## FACTS

On the morning of June 13, 1999, two Minneapolis police officers found appellant Scottie Paul Smith slumped over in the driver's seat of an automobile with the driver's side door locked and the engine running. Appellant appeared to be asleep, and the officers saw the barrel of a handgun "sticking out from underneath the right side" of appellant's leg. After offi-

cers announced themselves, appellant suddenly opened his eyes and unlocked the door. Neither officer observed signs of intoxication. Police ultimately arrested appellant.

Officers found the handgun resting on the vehicle's driver's seat. The barrel pointed toward the passenger door. Forensic testing showed that the handgun, a ten-millimeter Wyoming pistol, was cocked, and had bullets in the magazine and one in the chamber. Fingerprint testing showed that there were partial fingerprints on the gun, but none were of the quality necessary to compare with known fingerprints. Police also recovered a crack pipe from the automobile. The state charged appellant with unlawful possession of a firearm in violation of Minn.Stat. § 624.713(1)(b)(1998).

The parties stipulated to a number of facts: (1) appellant told an investigating officer, and the investigator confirmed, that appellant rented the automobile in which officers found him; (2) the night before appellant's arrest, appellant picked up a man known to him as "Tiger"; (3) appellant smoked crack that "Tiger" gave him and drove "Tiger" to a south Minneapolis address; (4) after 30 minutes, "Tiger" got out of the car and told appellant he would be "right back;" (5) appellant told the investigator that he did not know the handgun was in the car; (6) the investigator determined that a man named T.L. matched appellant's description of "Tiger"; (7) appellant identified T.L. as a man named "Woods" from a photo array; (8) the investigator learned that T.L. is a suspected active drug dealer in south Minneapolis and often has someone else drive for him; and (9) police once arrested appellant in T.L.'s house.

Appellant testified that the day before his arrest he rented the automobile, drove "Tiger" to an address in Minneapolis, and drank beer before falling asleep. Appellant said he had never seen the handgun and thought "Tiger" had placed the handgun where police found it. From the same series of photographs shown to him by the investigator, appellant, at trial, identified T.L. as "Tiger." Appellant explained that he did not identify T.L. as "Tiger" earlier because he feared "Tiger."

The prosecutor began his closing argument with an Aesop fable. The moral of the fable, said the prosecutor, was that necessity is the mother of invention. The prosecutor argued that appellant had, by necessity, changed his identification testimony. The prosecutor also asked the jury to question what appellant was doing with "Tiger" and why the gun was cocked and loaded. The jury convicted appellant.

## ISSUES

I. Was the evidence sufficient for a reasonable jury to find appellant guilty of unlawful possession of a firearm beyond a reasonable doubt?

II. Did the prosecutor's closing remarks constitute prejudicial misconduct?

## ANALYSIS

### I.

■ Appellant first argues that the evidence was insufficient for the jury to convict him because the state failed to prove that appellant possessed the handgun. Our review of a challenge to the sufficiency of evidence is limited to determining whether the evidence, viewed in the light most favorable to the conviction, supports the verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). We must assume that the jury believed the state's witnesses and disbelieved evidence that contradicted their testimony. *State v. Wahlberg*, 296 N.W.2d 408, 411 (Minn.1980).

■ A conviction based on circumstantial evidence warrants stricter scrutiny. *State v. Bias*, 419 N.W.2d 480, 484 (Minn.1988). Nevertheless, because the jury is in the best position to evaluate circumstantial evidence, a jury verdict is entitled to due deference. *Webb*, 440 N.W.2d at 430. Circumstantial evidence is

entitled to the same weight as direct evidence if the circumstances proved are inconsistent with any rational hypothesis except that of the accused's guilt. *State v. Race*, 383 N.W.2d 656, 661 (Minn.1986). The evidence as whole need not exclude all possibility that the defendant is innocent; it must only make such a theory seem unreasonable. *State v. Anderson*, 379 N.W.2d 70, 78 (Minn.1985).

■ In order to obtain a conviction for violation of Minn.Stat. § 624.713, subd. 1(b) (1998), the state must establish either actual or constructive possession of a firearm. *State v. Loyd*, 321 N.W.2d 901, 902 (Minn.1982). The state did not argue to the jury that appellant had actual possession of the handgun, which would have required proof that appellant physically had the handgun on his person. *State v. Florine*, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975).[1] Constructive possession may be proven by showing that (a) the police found the item in a place under the defendant's exclusive control to which other people did not have access, or (b) that, if the police found the item in a place to which others had access, there is a strong probability, inferable from the evidence, that the defendant was consciously exercising dominion and control over the item at the time. *Id.* at 106, 226 N.W.2d at 611. Essentially, the constructive possession doctrine permits a conviction where the state cannot prove actual possession, but the inference is strong that the defendant physically possessed the item at one time and did not abandon his possessory interest in it. *Id.* at 104–05, 226 N.W.2d at 610.

■ Appellant contends that the state failed to prove possession under either of the two prongs of the *Florine* test. Appellant claims that the jury could not have reasonably concluded that the handgun was in a place "under his exclusive control to which other people did not normally have access" because appellant rented the car and transported a passenger the day before his arrest. Appellant also contends that the evidence did not create a "strong" probability that appellant consciously exercised control over the handgun because police found appellant asleep or unconscious. We disagree.

■ Proximity is an important consideration in assessing constructive possession. *State v. Cusick*, 387 N.W.2d 179, 181 (Minn.1986). Moreover, constructive possession need not be exclusive, but may be shared. *State v. LaBarre*, 292 Minn. 228, 237, 195 N.W.2d 435, 441 (1972). In addition, this court has recently held that a defendant may constructively possess a firearm if he placed the firearm where it was discovered. *Salcido–Perez v. State*, 615 N.W.2d 846 (Minn.App.2000), *review denied* (Minn. Sept. 13, 2000).

The jury was able to consider evidence that officers found appellant asleep or passed out in a partially locked vehicle with the engine running and that officers saw a loaded, cocked handgun underneath appellant's right leg, barrel pointed toward the passenger door. The jury was also able to assess the degree of appellant's control over the vehicle, "Tiger's" reputation as a known drug dealer who uses a driver, appellant's past association with "Tiger," and appellant's unwillingness to initially identify "Tiger" from a photo array. The jury was also in the best position to judge appellant's credibility, including his testimony that he had never seen the handgun and his reasoning that "Tiger" must have put it where it was found.

On this evidence the jury could readily find that appellant had exclusive control over the driver's side of the automobile. The jury could also conclude that appellant

---

1. Because we affirm on grounds of constructive possession, and because actual possession of the handgun was not clearly argued by the parties in the district court proceeding, we do not need to decide whether the facts of this case might also support an argument for actual possession of the firearm. A very persuasive argument could be advanced that appellant concealed the handgun underneath his leg and that such concealment is equivalent to or demonstrative of physical possession.

consciously placed the handgun where it was found and continued, by sitting on it, to exercise dominion and control over it despite falling asleep or passing out. Moreover, the jury could properly reject as unreasonable appellant's theory that he was innocent because "Tiger" disposed of the loaded, cocked handgun by placing it underneath appellant's leg while appellant slept. Given the legitimate inferences that can be drawn from the evidence, and considering the deference this court gives to a jury's determinations on weight and credibility of evidence, we hold that a reasonable jury could conclude, beyond a reasonable doubt, that appellant constructively possessed the handgun.

## II.

 Appellant also contends that the prosecutor's closing arguments denied him a fair trial. The general standard for determining whether a new trial is warranted due to prosecutorial misconduct is whether the misconduct, viewed in the light of the whole record, appears to be "inexcusable and so serious and prejudicial that defendant's right to a fair trial was denied." *State v. Booker*, 348 N.W.2d 753, 755 (Minn.1984) (quotation omitted). Though appellant did not object to some of the arguments, improper remarks may require reversal even if a timely objection was not made. *State v. Salitros*, 499 N.W.2d 815, 820 (Minn.1993). We pay "special attention" to statements that may inflame or prejudice the jury where credibility is a central issue. *State v. Porter*, 526 N.W.2d 359, 363 (Minn.1995).

### A. The Aesop Fable

 Appellant first contends that the prosecutor's use of a fable as "ancient wisdom" to illustrate why appellant's identification testimony was inconsistent constitutes reversible error. The fable recounted how a crow, out of necessity, devised a plan that allowed it to drink from a vase. The prosecutor used the moral of the story, that necessity is the mother of invention, to argue that appellant, by necessity, made inconsistent identifications of "Tiger."

 The state's argument need not be "colorless," so long as it is based on the evidence produced at trial, or reasonable inferences from that evidence. *State v. Gulbrandsen*, 238 Minn. 508, 511, 57 N.W.2d 419, 422 (1953). Improper character attacks may constitute prosecutorial misconduct if the prosecutor's references to the defendant's character have the potential for planting in the jurors' minds a prejudicial belief from otherwise inadmissible evidence. *State v. Ives*, 568 N.W.2d 710, 714 (Minn.1997). Consequently, an allegory may not go beyond acceptable bounds. *See State v. Washington*, 521 N.W.2d 35, 39 (Minn.1994) ("scorpion" fable an improper character reference); *State v. Merrill*, 428 N.W.2d 361, 372 (Minn.1988) (characterization of defendant as "an animal" improper).

 But a prosecutor is not prevented from questioning the credibility of witnesses—including the defendant. *State v. Ture*, 353 N.W.2d 502, 516 (Minn.1984); *see also State v. McDaniel*, 534 N.W.2d 290, 293 (Minn.App.1995), *review denied* (Minn. Sept. 20, 1995) (applying the rule in a cross-examination context). In this case, the prosecutor did not compare appellant to the crow in order to suggest appellant *was* a crow. Instead, the prosecutor used the illustration of the crow's resourcefulness to attack appellant's credibility and explain his inconsistent identifications of "Tiger". A persuasive final argument is more art than science; so long as an argument remains within acceptable bounds it should not be found wanting merely because it is colorful. Because we do not see any undue prejudice by using the fable in this manner, the prosecutor's argument did not constitute misconduct warranting a new trial.

### B. "Tiger"

 Appellant also argues that the prosecutor's speculative argument about

what "Tiger" and appellant might have been doing the night before appellant's arrest constitutes misconduct. The prosecutor said, "Was Tiger gonna do some nasty business in there and he wanted a back up when he was ready to go [?] Pure speculation, but maybe you should consider that. Why would it be cocked—[?]." The court overruled a defense objection, and the prosecutor did not return to the question.

A prosecutor may argue that a particular defense lacks merit, or may make arguments in anticipation of the defense's closing arguments. *Salitros*, 499 N.W.2d at 818. In this case, the prosecutor's argument merely asks the jury to consider the reasonableness of appellant's claims in light of "Tiger's" reputation as a known drug dealer who used a driver, appellant's testimony that "Tiger" gave appellant cocaine, and the forensic evidence that the handgun was loaded and cocked. The prosecutor's references to "Tiger" and his "nasty business," are based on reasonable inferences that can be drawn from the evidence, and do not constitute prejudicial prosecutorial misconduct.

## DECISION

Evidence that police found the defendant alone and asleep in a partly locked vehicle, engine running, with a handgun partially beneath his right leg is sufficient to find the defendant possessed a firearm. A jury could reasonably conclude, beyond a reasonable doubt, that the defendant constructively possessed the firearm by placing it where it was found, and did not abandon that possessory interest despite falling asleep. In addition, a prosecutor does not commit misconduct by using a fable, together with the evidence adduced at trial, to attack the defendant's credibility or by questioning the reasonableness of appellant's defense theory.

**Affirmed.**