# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A12-1850

State of Minnesota,
Respondent,

vs.

Roosevelt Hunter,
Appellant.

**Filed December 22, 2014**
**Affirmed in part, reversed in part, and remanded**
**Smith, Judge**

Ramsey County District Court
File No. 62-CR-10-2526

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Katherine M. Conners, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Smith, Judge.

## S Y L L A B U S

A person constructively possesses a controlled substance when the person knowingly exercises dominion and control over the controlled substance. It is not sufficient that the person knowingly exercises dominion and control over the place in which the substance was found when others had access to that place.

## OPINION

**SMITH**, Judge

We reverse the district court's denial of appellant's petition for postconviction relief because the state does not demonstrate that the district court's erroneous jury instruction was harmless beyond a reasonable doubt, and we remand for a new trial. But we affirm the district court's denial of appellant's motion to suppress evidence because police officers had reasonable, articulable suspicion to support the seizure of appellant's vehicle.

## FACTS

During an evening in March 2010, St. Paul police officers specializing in narcotics investigations were in a vehicle conducting surveillance in a grocery-store parking lot known as a location for drug deals. The officers wore blue shirts with the word "police" written in large yellow letters. About 15 to 20 minutes into the surveillance period, the officers observed a sport utility vehicle (SUV) with a "loud stereo" and tinted windows enter the parking lot and park in a location "far away from the rest of the pack of vehicles" in the lot. The officers observed that the driver was the only occupant of the vehicle and that he remained in the vehicle after parking it. A few minutes later, a Buick sedan entered the parking lot and parked next to the SUV. Leaving the sedan running, the driver and the sole passenger of the sedan exited it and entered the SUV. The officers later testified that they could see the SUV driver talking with one of the individuals who had entered the SUV. Based on their observations of the behavior of the persons, the

2

officers suspected that a drug transaction was underway, and they decided to approach the SUV from behind.

The officers exited their vehicle, and one officer approached the passenger's side of the SUV while two others approached the driver's side. The officers testified that an officer approaching the driver's side yelled for the driver to show his hands. The officer approaching the passenger's side testified that he looked into the SUV and observed the driver holding what he believed to be a bag of crack cocaine and money in the area between the driver and the passenger, and the front-seat passenger holding money in his hand. The officer described the cocaine he observed as "bigger [than] a golf ball, but not as big as a baseball." He testified that the driver and front-seat passenger were facing each other "in an almost uncomfortable manner."

The officer on the passenger side then opened the SUV's front passenger door. He testified that he saw the SUV driver, later identified as appellant Roosevelt Hunter, drop the bag of crack cocaine onto the passenger's side seat and that the man in the passenger's seat then pushed the bag onto the floor.

The officers arrested the occupants of the SUV. During an inventory search of the SUV, a police officer found a bag of suspected cocaine, two cellular telephones and a digital scale.

The state charged Hunter with second-degree controlled-substance possession. Hunter moved the district court to suppress all evidence found in his SUV and, after a hearing, the district court denied the motion. Hunter moved the district court to reopen or

reconsider its denial of his suppression motion, and although the district court modified its factual findings, it denied the motion.

During a jury trial, both officers testified about what they had observed before and during their approach to Hunter's SUV. In addition to the officers' testimony, the jury received testimony and exhibits indicating that Hunter's SUV had heavily tinted windows, which made it difficult to see into the SUV.

An analyst with the St. Paul Crime Lab (SPCL) testified that she had tested the substance in the bag and determined that it was cocaine. She testified that her substance-testing instruments were maintained daily and were working properly when she determined that the bag contained cocaine. She also described conditions at the SPCL, testifying that the lab was kept secured so that only lab employees could enter by using key cards. Hunter's counsel did not seek to impeach the analyst's testimony on these points.

The state moved the district court for a jury instruction stating that "[c]onstructive possession exists when an object is not on the person or in his immediate presence but it is in a place subject to that person's conscious dominion and control." Hunter's counsel objected and, after hearing argument, the district court granted the state's motion.

The jury found Hunter guilty. At the sentencing hearing, Hunter's attorney stated that "on the way over here to court today," he had heard a report of problems at the SPCL that rendered its testing procedures unreliable. He argued that the report constituted newly discovered evidence requiring a new trial. The district court denied the motion as

untimely because it had not been filed within 15 days of the verdict. It sentenced Hunter to 108 months' incarceration.

Hunter petitioned for postconviction relief on July 2, 2013, demanding a new trial based on his claims that newly discovered evidence of problems at the SPCL undermined key testimony in his case and constituted a violation as set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1970) and that he received ineffective assistance of trial counsel.[1] During the hearing on November 18, the parties agreed that the district court should decide Hunter's ineffective-assistance claim based solely on written submissions.

The district court also addressed a retest of the cocaine found in Hunter's SUV. Hunter's postconviction counsel stated that she had not yet had an opportunity to consult with experts, and the district court invited her to submit additional briefing by December 18, 2013. She expressed a desire to require deposition testimony regarding SPCL testing procedures, and the state agreed to facilitate it. But the state also argued that the district court could deny the petition without considering SPCL testing problems because Hunter had presented no evidence that any general SPCL testing problems affected the evidence in his particular case. Hunter's counsel pledged to "inundate [the district court] with paper" in response to its additional-briefing instructions. But, although the state's postconviction counsel indicated to the district court that she had received additional information from Hunter's counsel, the record does not contain the information.

---

[1] Hunter filed a direct appeal on October 16, 2012, but on April 26, 2013, he moved the court of appeals to stay his appeal and remand for postconviction proceedings to develop a record regarding his allegations of testing errors at the SPCL. This court granted the motion on June 4, 2013.

On April 1, 2014, the district court denied Hunter's petition. In the memorandum accompanying its order, the district court stated that "[t]he parties were given the opportunity to present witnesses and testimony or make further argument," but "[b]oth [Hunter] and [the state] chose to submit the matter on the briefs." The district court noted that Hunter had selected a trial strategy of denying that the cocaine belonged to him and had foregone his opportunity to challenge whether the substance was cocaine in the first place. Accordingly, the district court ruled, any evidence of testing deficiencies at the SPCL did not meet the criteria for newly discovered evidence justifying a new trial. The district court also ruled that, because any evidence of SPCL testing problems would have been impeaching rather than evidence of actual innocence, it did not justify a new trial. Lastly, based on the strength of other evidence against Hunter, it concluded that any evidence of problems at the SPCL would not have changed the outcome of his trial.

**ISSUES**

I.      Did the district court commit reversible error by providing an erroneous instruction to the jury on constructive possession?

II.     Did the district court err by failing to suppress the evidence seized from Hunter's SUV?

**ANALYSIS**

**I.**

Hunter contends that the district court committed reversible error by granting the state's request for a modified jury instruction regarding constructive possession. District courts are allowed "considerable latitude" in phrasing jury instructions. *State v. Baird*,

654 N.W.2d 105, 113 (Minn. 2002). Accordingly, "[w]e review a district court's decision to give a requested jury instruction for an abuse of discretion." *State v. Koppi*, 798 N.W.2d 358, 361 (Minn. 2011). A jury instruction is erroneous when it "materially misstates the law." *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001). When determining whether they are erroneous, "the jury instructions must be reviewed as a whole." *State v. Flores*, 418 N.W.2d 150, 155 (Minn. 1988). An erroneous jury instruction merits a new trial when it cannot be determined "beyond a reasonable doubt that the error had no significant impact on the verdict." *State v. Valtierra*, 778 N.W.2d 425, 433 (Minn. 2006) (quotation omitted).

Hunter highlights the district court's phrasing—adopted over his objection—of constructive possession as "when an object is not on the person or in his or her immediate presence, but is in a place subject to that person's conscious . . . dominion and control." He argues that this instruction misstates the law by diverting the jury's attention from whether Hunter exercised dominion and control over the cocaine to whether he merely exercised dominion and control over his SUV where the cocaine was found. Hunter's argument has merit.

When moving for the challenged jury instruction, the prosecutor cited the supreme court's holding in *State v. Florine*. In *Florine*, the supreme court held that a jury may find that a defendant constructively possessed a controlled substance "in a place to which others had access [and] there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it." 303 Minn. 103, 105, 226 N.W.2d 609, 611 (1975). As stated in *Florine*, the rule is

7

ambiguous as to whether the "it" that a defendant must exercise dominion and control over in order to constructively possess a controlled substance is the place in which the controlled substance was found or is the controlled substance itself. The most recent revisions to the Minnesota Jury Instruction Guides (CRIMJIGs) relating to constructive possession reflect an identical ambiguity. *See* 10A *Minnesota Practice*, CRIMJIG 20.04, 20.14 (Supp. 2014). The prosecutor argued that the "it" in *Florine* referred to the place in which the controlled substance was found, not the substance itself. The district court tacitly endorsed the prosecutor's interpretation of *Florine* when it gave the prosecutor's requested instruction, directing the jury to find constructive possession if it found that Hunter had exercised dominion and control over the SUV.

But a close reading of other constructive-possession cases—including some cited by the prosecutor in his motion—indicates that a defendant must exercise dominion and control over the substance itself in order to constructively possess it. In *State v. LaBarre*, decided before *Florine*, the supreme court held that "the evidence . . . justified the jury in finding that [the defendant] exercised knowing dominion and control over and . . . had immediate and accessible possession *of the cocaine, hashish, and LSD* found in the front bedroom." 292 Minn. 228, 237, 195 N.W.2d 435, 441 (1972) (emphasis added). It was the defendant's control of the controlled substances and not the defendant's control of the bedroom that constituted constructive possession. In *State v. Robinson*, the supreme court described the *Florine* rule as defining constructive possession to include situations where the controlled substance was found "in a place where others had access" and "the defendant was at the time consciously or knowingly exercising dominion and control

8

*over the substance in question.*" 517 N.W.2d 336, 340 (Minn. 1994) (emphasis added). Similarly, this court applied *Florine* in *State v. Dickey*, holding that "[a] police officer has probable cause to arrest a suspect for constructive possession of a controlled substance when . . . there is a strong probability that the suspect was exercising or had exercised dominion or control *over the controlled substance.*" 827 N.W.2d 792, 796-97 (Minn. App. 2013) (emphasis added). We therefore hold that the district court's constructive-possession jury instruction materially misstated the law.

The state contends, however, that, because the police officer testified that he saw Hunter holding a bag of cocaine, this was an actual-possession case, and so any error in the constructive-possession portion of the district court's jury instructions was harmless. It is true that the officer's testimony would support a finding of actual possession. It is also true that, if the jury had been properly instructed on constructive possession, the officer's testimony that Hunter was holding the drugs could alternatively constitute circumstantial evidence that he exercised dominion and control over the drugs and continued to possess them, constructively, after he discarded them. But because the jury was not properly instructed on constructive possession and competing credible evidence existed as to whether the officer could have seen Hunter holding the drugs from outside the car, we have no way of knowing whether the jury found Hunter guilty because it believed that the officer saw the drugs in Hunter's hand or whether it instead found him guilty based on the erroneous constructive-possession jury instruction. Since the conflicting evidence leaves a reasonable doubt that all jurors believed the officer's testimony, we cannot treat the error as harmless. Therefore, Hunter is entitled to a new

trial.  Accordingly, we reverse his conviction and remand for a new trial, consistent with other holdings in this opinion.

**II.**

Hunter also argues, both through counsel and at much greater length in his pro se supplemental brief, that the district court should have suppressed the evidence seized from his SUV because the police officers lacked a reasonable suspicion justifying their approach and seizure.  Although we reverse and remand for a new trial, we address this issue in the interests of judicial economy because it will likely arise again on remand. *See, e.g.*, *State v. Logan*, 535 N.W.2d 320, 325 (Minn. 1995).  Before conducting an investigatory seizure of a person, police officers must have a reasonable, articulable suspicion of criminal activity.  *State v. Munson*, 594 N.W.2d 128, 136 (Minn. 1999). "Reasonable, articulable suspicion must be present at the moment a person is seized." *State v. Bergerson*, 659 N.W.2d 791, 795 (Minn. App. 2003).  "We undertake a de novo review to determine whether a search or seizure is justified by reasonable suspicion . . . ." *State v. Burbach*, 706 N.W.2d 484, 487 (Minn. 2005).  When doing so, we accept the district court's factual findings unless they are clearly erroneous.  *Id.*  Reasonableness is "evaluated by looking at the totality of the circumstances."  *Id.* at 488 (quotation omitted).  But the standard for reasonable suspicion is "not high," requiring only "something more than an unarticulated hunch, that the officer must be able to point to something that objectively supports the suspicion at issue."  *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006) (quotations omitted).

Citing *State v. Vohnoutka*, 292 N.W.2d 756, 757 (Minn. 1980), the state argues that no seizure requiring reasonable suspicion or probable cause occurred until after an officer approaching the parked SUV had observed Hunter holding a bag of cocaine. However, Hunter contends that, because one officer's shouted direction for Hunter to show his hands preceded the other officer's observation of the bag of cocaine, a seizure had occurred before the officer developed probable cause by observing the bag.[2] After some confusion, the district court ultimately determined that Hunter's order of events was correct, finding that the officer on the driver's side opened the door before shouting for the driver to show his hands and, therefore, before the other officer observed the cocaine, and the state does not argue that this conclusion is clearly erroneous.

We need not reparse the timing of these events, however, because reasonable suspicion supported an investigatory seizure even under Hunter's characterization of the facts. Officers were present in the parking lot because it was known as a location for drug transactions. Although this alone does not constitute reasonable suspicion of criminal activity, *see State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992), a police officer also testified that he observed Hunter's SUV enter the parking lot and park in a

---

[2] Through counsel, Hunter implicitly challenges the officer's testimony that he observed a bag of cocaine by calling it "implausible." In a pro se supplemental brief, Hunter argues that the heavy tint on his SUV's windows made it impossible for the police officer to observe what the officer said he did. The district court credited the officer's claim that he observed the cocaine, however, and, although we have already held that the doubts Hunter raises about the tinted windows are sufficient to make it possible that the jury credited them enough to rely on a constructive-possession theory rather than an actual-possession theory, these doubts do not rise to the level of certainty necessary for us to declare the district court's pretrial finding to be clearly erroneous. *See State v. Jones*, 566 N.W.2d 317, 325 (Minn. 1997) ("Under the clearly erroneous standard, we shall give due regard to the [district] court's ability to ascertain the credibility of witnesses.").

11

location that, according to the officer's training and experience, indicated preparation for a drug transaction. The officer also observed the sedan enter the parking lot and park in a location consistent with the same inference of a potential drug transaction. The officer then observed the sedan's driver and passenger leave the still-running vehicle, enter Hunter's SUV, and begin talking with him. Although Hunter is correct that these actions may also be consistent with innocent explanations, when taken together with the police officers' training and experience, they are sufficient to constitute reasonable suspicion justifying the officers' approach and investigatory seizure. *See State v. Britton*, 604 N.W.2d 84, 88-89 (Minn. 2000) ("We are deferential to police officer training and experience and recognize that a trained officer can properly act on suspicion that would elude an untrained eye. It is also true that wholly lawful conduct might justify the suspicion that criminal activity is afoot." (citations omitted)). Having developed reasonable suspicion justifying an investigatory seizure, the police officers were justified in opening the car door even before viewing the cocaine. *See State v. Ferrise*, 269 N.W.2d 888, 890 (Minn. 1978) (holding that officer safety and other concerns authorize police officers to open car doors during an investigatory seizure). Thus, the district court did not err by refusing to suppress the evidence found in the car.

Hunter also argues that deficiencies at the SPCL rendered the controlled-substance evidence against him inadmissible. Although we may address this issue in the interests of judicial economy, *see, e.g.*, *Logan*, 535 N.W.2d at 325, we decline in this instance to do so, allowing the district court at its discretion to further develop the record and make appropriate findings.

# D E C I S I O N

The district court's jury instruction defining constructive possession as a defendant's exercise of dominion and control over the place in which a controlled substance was found materially misstated the law.

**Affirmed in part, reversed in part, and remanded.**