*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0431**

State of Minnesota,
Respondent,

vs.

Jimmy Dawayne Lester,
Appellant.

**Filed June 20, 2016
Affirmed
Rodenberg, Judge**

Hennepin County District Court
File No. 27-CR-11-33928

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and Jonathan P. Schmidt, Kathryn M. Short, Special Assistant Public Defenders, Briggs & Morgan, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Cleary, Chief Judge; and Smith, John, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**RODENBERG**, Judge

In this direct appeal from his conviction of third-degree possession of a controlled substance, appellant Jimmy Dawayne Lester argues that the heroin discovered in a warrantless search of the rental vehicle he was driving must be suppressed, and, in the alternative, that there is insufficient evidence that he constructively possessed the heroin. In an unpublished opinion filed on April 13, 2015, this court reversed appellant's conviction, concluding that the heroin must be suppressed because the "police lacked probable cause to arrest Lester and search his rental car." *State v. Lester*, A14-0431, 2015 WL 1608701, at *6 (Minn. App. Apr. 13, 2015). Because the suppression issue was dispositive, we did not consider appellant's sufficiency-of-the-evidence argument.

On June 30, 2015, the Minnesota Supreme Court granted further review. In an opinion filed on February 10, 2016, the supreme court reversed, concluding that the district court properly denied appellant's suppression motion because "the search of [appellant's] car was lawful under the automobile exception." *State v. Lester*, 874 N.W.2d 768, 772-73 (Minn. 2016). The supreme court remanded the matter to this court to "address any remaining issues on appeal." *Id.* at 773. We reinstated the appeal and the parties have filed supplemental briefs on the sufficiency-of-the-evidence issue. Because the evidence is sufficient to support appellant's conviction, we affirm.

## FACTS

Appellant waived his right to a jury trial and his case was tried to the court over several days. The district court made detailed findings of fact, all of which are consistent

with our independent review of the trial record. *See Wilson v. Moline*, 234 Minn. 174, 182,

47 N.W.2d 865, 870 (1951) (stating that the duty of an appellate court "is performed when

we consider all the evidence . . . and determine that it reasonably supports the findings").

The district court made the following factual findings to support its guilty verdict:

1. On October 22, 2011, [appellant] rented a Dodge Charger. As part of the rental contract, [appellant] agreed that he would not allow any other person to drive the car.

2. On October 26, 2011, [appellant] drove the Charger to a gas pump at a Super America gas station, located on the northeast corner of West Broadway and University Avenue NE, in Minneapolis. A man, later identified as [A.E.],[1] was sitting in the front passenger seat. [Appellant] and [A.E.] got out of the Charger and went into the Super America store. After a few minutes, they came out of the store and walked to the Charger. [Appellant] remained with the Charger while [A.E.] walked north to the sidewalk adjacent to West Broadway. For approximately two minutes, [A.E.] walked back and forth on the sidewalk while talking on a cell phone. During this time, [appellant] drove the Charger away from the gas pump to the north side of the Super America parking lot, where he parked it, facing east, parallel to the West Broadway sidewalk (where [A.E.] was still pacing). While [appellant] remained in the driver's seat of the Charger, [A.E.] walked west across University Avenue NE and then north across West Broadway to a McDonald's parking lot. While walking to that location, [A.E.] remained on his cell phone and was turning his head left and right to see around him.

3. After [A.E.] arrived in the McDonald's parking lot, a Pontiac Grand Am drove into the lot, circled around the McDonald's restaurant, and then stopped at [A.E.'s] location on the south side of the lot. [A.E.] got in the passenger's seat of the Grand Am. [A.E.] and the driver, later identified as [T.H.], were the only occupants of the Grand Am. After [A.E.] got in the Grand Am, [T.H.] drove

---

[1] In the *Rasmussen* hearing transcript, "A.E." is identified by his nickname "J." In the court trial transcript he is identified as A.E.

3

out the south exit of the parking lot and then east on West Broadway.

4. The foregoing conduct was observed by Minneapolis Police Officer Kyle Ruud, who was conducting surveillance from the McDonald's parking lot. When Officer Ruud saw [A.E.] get into the Grand Am, he concluded that a drug transaction was occurring. He immediately called on uniformed Minneapolis police officers to arrest [appellant], still seated in the Charger, and the occupants of the Grand Am.

5. Minneapolis Police Officer Peter Stanton, driving a marked squad, stopped the Grand Am (still travelling east on West Broadway) and arrested [T.H.] and [A.E.]. During the stop and arrest, Officer Stanton did not observe [A.E.] or [T.H.] throw anything out of the car or make any other furtive gestures. [A.E.] and [T.H.] were searched. No drugs or drug paraphernalia [were] found on either person. [A.E.] had $200 cash on his person. The Grand Am was taken to the 4th precinct police station where it was searched. No drugs or drug paraphernalia [were] found.

6. Minneapolis Police Sgt. Steve Mosey, driving a marked squad car, drove into the Super America parking lot, where [appellant] was still seated in the Charger. Sgt. Mosey arrested [appellant] without incident. No drugs or drug paraphernalia were found on [appellant]. [Appellant] had $34 on his person.

7. The record is silent regarding how much time elapsed between the time [A.E.] got into the Grand Am and the time Sgt. Mosey arrested [appellant]. Because Officer Ruud called for the arrests when he saw [A.E.] get into the Grand Am, it appears that [appellant] was arrested within a moment after that event occurred.

8. The Charger was transported to the 4th precinct station where it was searched by Officer Stanton. Using one or two hands (i.e., without having to use a tool), Officer Stanton removed a panel from the front passenger side of the center console. Concealed behind the panel was a plastic bag containing eleven "bindles" of suspected heroin. No drug paraphernalia or other evidence of heroin use was found in the Charger.

9. Six of the eleven bindles of suspected heroin were tested at the BCA. The contents of five of the six bindles tested ranged in weight from approximately .1 gram to

4

approximately .4 grams. The sixth bindle weighed significantly more than the others, approximately 2.0 grams. The average weight of the contents of the six bindles was approximately .5 grams. The total weight of the contents of all six bindles was 3.12 grams. Each of the six bags tested contained heroin.

10. The heroin seized from the Charger had been packaged for resale, but the record is silent with regard to who did the packaging or the circumstances under which the packaging occurred. If sold one bindle at a time, the retail value of the heroin seized (assuming all 11 bindles contained heroin) was approximately $400-$600. A user of heroin may purchase multiple bindles at one time for personal use in order to minimize the risk of detection associated with making multiple purchases.

The district court concluded that the state proved beyond a reasonable doubt that appellant knowingly exercised dominion and control over the heroin but that the state did not prove beyond a reasonable doubt that appellant possessed the heroin with intent to sell it. *See* Minn. Stat. §§ 152.022, subd. 1(1) (2010) (prohibiting sale of three grams or more of heroin), .01, subd. 15a(3) (2010) (defining sale as possession with intent to sell). This appeal of the third-degree possession charge followed.

## D E C I S I O N

Appellant contends that his conviction must be reversed because the evidence that he possessed three grams or more of heroin was insufficient. In considering a claim of insufficient evidence, our review "is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court assumes "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101,

5

108 (Minn. 1989). We apply this same standard of review to court trials in which the district court sits as the fact-finder. *Davis v. State*, 595 N.W.2d 520, 525 (Minn. 1999).

As relevant here, the charge of third-degree controlled substance crime requires proof that appellant processed "three grams or more" of heroin. Minn. Stat. § 152.023, subd. 2(1) (2010). Because the heroin was not found on appellant's person, the state must prove beyond a reasonable doubt that he constructively possessed the heroin at the time of his arrest. *State v. Florine*, 303 Minn. 103, 104-05, 226 N.W.2d 609, 610 (1975). To establish constructive possession, the state must show either "(a) that the police found the substance in a place under defendant's exclusive control to which other people did not normally have access, or (b) that, if police found it in a place to which others had access, there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it." *Id.* at 105, 226 N.W.2d at 611. In order to constructively possess a controlled substance, the defendant must exercise dominion and control over the substance itself, not the place in which the substance is found. *State v. Hunter*, 857 N.W.2d 537, 542 (Minn. App. 2014). Constructive possession need not be exclusive and may be shared. *State v. Smith*, 619 N.W.2d 766, 770 (Minn. App. 2000), *review denied* (Minn. Jan. 16, 2001).

Constructive possession may be proved by direct or circumstantial evidence. *See State v. Salyers*, 858 N.W.2d 156, 160-61 (Minn. 2015) (noting that the state established exclusive control by direct evidence where a gun was found in a bedroom safe in defendant's home, and applying circumstantial-evidence standard was unnecessary). "Direct evidence is evidence that is based on personal knowledge or observation and that,

if true, proves a fact without inference or presumption." *Bernhardt v. State*, 684 N.W.2d 465, 477 n.11 (Minn. 2004) (quotation omitted). Circumstantial evidence is "[e]vidence based on inference and not on personal knowledge or observation." *Id*. "'A conviction based on circumstantial evidence . . . warrants heightened scrutiny.'" *State v. Sam*, 859 N.W.2d 825, 833 (Minn. App. 2015) (quoting *Smith*, 619 N.W.2d at 770). When reviewing the sufficiency of circumstantial evidence, we apply a two-step analysis, which requires that we first identify the circumstances proved, "giving due deference to the fact-finder and construing the evidence in the light most favorable to the verdict." *Id.* "Second, we determine whether the circumstances proved are consistent with guilt and inconsistent with any other rational or reasonable hypothesis." *Id.* "This analysis requires that we look at the circumstances proved not as isolated facts but rather as a 'complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude . . . any reasonable inference other than guilt." *Id.* (quoting *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010)).

In *State v. Porte*, we applied an elements-based approach in reviewing the sufficiency of the evidence of possession and sale of a controlled substance. 832 N.W.2d 303, 309 (Minn. App. 2013). Under this approach, which is consistent with the supreme court's analysis in *Al-Naseer*, 788 N.W.2d at 474-75 (noting cases in which the court applied heightened scrutiny to some elements despite fact that direct evidence stablished other elements), we first consider if there is direct evidence on a disputed element that is sufficient to prove the disputed element. If the direct evidence is sufficient there is no need to evaluate the reasonableness of any inferences. *Porte*, 832 N.W.2d at 309. This

7

elements-based approach was recently employed by the Minnesota Supreme Court. *State v. Horst*, ___ N.W.2d ___, ___, 2016 WL 2908009, at *12-13 (Minn. May 18, 2016).

The disputed element here is possession. Appellant argues that the heroin was not found in a place under his exclusive control because it was found in a rental vehicle to which "hundreds of people may have had access." Appellant also argues that he did not have exclusive control over the place where the drugs were found because A.E. had access to the car and was sitting on the passenger side, closer to the side of the console where the heroin was found.[2] We agree with appellant that the heroin was not found in a place under his exclusive control.

The next question is whether the state proved beyond a reasonable doubt that appellant was consciously exercising dominion and control over the heroin found in the center console of the vehicle he was driving. *See Hunter*, 857 N.W.2d at 542-43. Because this determination is based on an inference, this necessarily requires us to apply the circumstantial-evidence standard of review.

The district court made detailed factual findings to support its guilty verdict, and we must give deference to those findings in determining the circumstances proved. Based on the district court's factual findings, the inference that appellant was exercising dominion

---

[2] We note that appellant relies on the tip from the CRI that A.E. would be delivering heroin to the area, which prompted Officer Ruud to set up surveillance. But the district court judge who presided over trial was the not the judge who presided over the *Rasmussen* hearing. And the district court judge granted appellant's request to exclude this evidence from the court trial. Ruud did not testify at trial about the CRI. The district court did not include any reference to the CRI's tip in its findings of fact. The tip involving A.E. is, therefore, not a circumstance proved.

and control over the heroin in the console of the rental vehicle is a reasonable inference. It is permissive for the fact-finder to infer that the driver of a vehicle has knowing possession of a controlled substance found in the vehicle. *See* Minn. Stat. § 152.028, subd. 2 (2014) ("The presence of a controlled substance in a passenger automobile permits the fact finder to infer knowing possession of the controlled substance by the driver or person in control of the automobile when the controlled substance was in the automobile."). Although the district court did not reference this statute in its order, the district court was nonetheless persuaded by the fact that appellant rented the vehicle only four days before the offense, which made the inference that A.E. or someone else hid the controlled substance in the vehicle without appellant's knowledge unreasonable.

Appellant argues that his case is like *Sam*, where we reversed a possession-of-a-controlled-substance conviction. 859 N.W.2d at 836. There, drugs were found in the glove compartment of a vehicle that Sam was driving but did not own. *Id.* at 828. The passenger in that case made "a lot" of movement toward the center of the vehicle, while Sam made no such movements. The methamphetamine was found in the glove compartment, directly in front of the passenger's front seat, the passenger had methamphetamine in his wallet at the time of arrest, and Sam had no drugs or paraphernalia on his person. *Id.* at 834. These facts in *Sam* supported a reasonable inference that the passenger stashed the drugs in the glove compartment, which is one of the reasonable inferences that persuaded this court to reverse the conviction. *Id.* at 835. We were also persuaded that it was reasonable to infer that the owner of the car left the drugs in the glove compartment. *Id.*

9

Here, unlike *Sam*, neither A.E. nor appellant made any furtive movements, and neither A.E. nor appellant was in possession of drugs at the time of the arrest, making the inference that A.E. stashed the drugs in the console unreasonable. Additionally, the state persuasively argues that the heroin was packaged for individual sale, weighed three grams or more, and was valued at approximately $600, which is substantially more than the methamphetamine that was found in the glove compartment in *Sam*, which was a fifth-degree possession charge, requiring possession of any amount of a mixture containing a controlled substance listed in Schedules I, II, III, or IV, Minn. Stat. § 152.025, subd. 2(a)(1) (2012). The small amount of a controlled substance in *Sam* compared to the three grams or more worth $600 in this case makes the inference that someone else left the heroin in the rental vehicle unreasonable. Because the inferences inconsistent with guilt are not reasonable, we conclude that the evidence is sufficient to support appellant's conviction of third-degree controlled substance crime.

**Affirmed.**