*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0188**

State of Minnesota,
Respondent,

vs.

Terry Allen Stewart,
Appellant.

**Filed December 18, 2023
Affirmed
Connolly, Judge**

Otter Tail County District Court
File No. 56-CR-19-109

Keith Ellison, Attorney General, Lydia Villalva Lijo, Assistant Attorney General, St. Paul, Minnesota; and

Michelle Eldien, Otter Tail County Attorney, Fergus Falls, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Segal, Chief Judge; and Reyes, Judge.

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

On appeal from his conviction of first-degree possession of a controlled substance, appellant argues that the evidence was insufficient to prove beyond a reasonable doubt that he constructively possessed the contraband found by law enforcement. We affirm.

## FACTS

Respondent State of Minnesota charged appellant Terry Stewart with first-degree controlled substance crime—sale; first-degree controlled substance crime—possession; fleeing police in a motor vehicle; and fleeing police on foot. At trial, the state presented evidence that Stewart was under surveillance by law enforcement because he was suspected of selling controlled substances. On January 10, 2019, during a surveillance of Stewart's storage garage, a county sheriff's sergeant observed Stewart exit the garage, place a bag in the back seat of a car, and drive away.

Because Stewart's driver's license was revoked, and the vehicle he was driving had expired license plates, the sergeant requested that a local police officer conduct a traffic stop of the vehicle driven by Stewart. But when the officer got close to Stewart's vehicle and activated the squad car's emergency lights, Stewart failed to stop. Instead, Stewart glanced back at the officer and proceeded to speed up and drive several more blocks until he reached his residence.

Stewart stopped his car outside of his residence, got out of the car, and made eye contact with the officer, but ignored the officer's commands to stop. According to the officer, Stewart's hands were in front of his body, and "[i]t almost looked like he was a running back holding the football. . . . [I]t just looked like his hands were holding something in front of his body." Stewart then fled around the building on foot and the officer gave chase. During the chase, the officer could not see what Stewart had, if anything, in his hands, nor did the officer observe Stewart drop or throw anything.

Stewart's residence was located in a building that housed three separate apartment units, and after the officer chased Stewart around the building twice, Stewart entered the building through its main entrance. According to the officer, he followed Stewart and found himself in an entry way with a "stairway that goes up and to the left," and a stairway going "straight down." The officer testified that, because he was a "second or two" behind Stewart, he was not "positive" which direction Stewart went. But the officer stated that, because he "heard a little bit of a thumping or noises above" him, he "decided to take the upstairs route."

The officer proceeded up the stairway and encountered Stewart on a landing as Stewart "was coming back down." According to the officer, the lighting in the area was "[p]oor" and Stewart's momentum caused them to fall onto the "stairwell corner," where they struggled for about 20 seconds. During the struggle, the officer was on top of Stewart, and Stewart's right arm was closest to the wall. Eventually, with the help of another law enforcement officer, Stewart was handcuffed, arrested, and escorted from the building. A subsequent search of Stewart revealed no drugs. But in searching Stewart, and the area in which the struggle occurred, the following items were discovered: a large amount of cash in $20 bills, a knife, a glove, and a "pay/owe sheet" containing names that were familiar to local law enforcement as persons involved in drug activity.

Law enforcement officers also searched Stewart's vehicle. Although no drugs were discovered in Stewart's vehicle, officers found a tool bag on the driver's side back seat. Inside the tool bag was a PVC pipe with a removable cap containing numerous baggies that are commonly used to package controlled substances.

Shortly after Stewart was arrested, a canine unit searched the perimeter of Stewart's residence. The initial search revealed no drugs. During a subsequent interview with law enforcement, Stewart stated that he ran from law enforcement because he "freaked out." Stewart was also impliedly asked by law enforcement "how much" methamphetamine he was carrying. Stewart responded, "not much," but then stated that he did not want to admit guilt. Stewart was then asked if he threw the drugs, to which he replied that he could not remember if he threw it or just lost it. Finally, Stewart was asked if he threw the drugs where children could find them, and Stewart replied not to worry about it, and stated that there were no children in the building.

Based on Stewart's responses, the canine unit was again asked to search the area around Stewart's residence. During the second search, the canine unit alerted by a wall on the landing where Stewart struggled with the officer. According to the canine handler, the wall is "not very well-built," and there was a gap at the bottom of the wall where the paneling was loose. The handler pulled back the paneling and found the following items in the wall: a brown glove, plastic baggies, a potholder, and two square-shaped packages wrapped in plastic and tinfoil. Although no fingerprints suitable for examination were found on the packages, testing confirmed that one package contained 27.506 grams of methamphetamine and the other contained 27.480 grams of methamphetamine.

After the methamphetamine was discovered in the wall of Stewart's residential building, Stewart was again interviewed by law enforcement. According to the sergeant, Stewart replied, "Okay, good," when told that the methamphetamine was found in the wall. And when asked if the methamphetamine was the reason he ran, Stewart agreed.

4

The jury found Stewart guilty as charged, and that Stewart was a danger to public safety. The district court sentenced Stewart to an upward departure of 240 months in prison for first-degree possession of a controlled-substance, and a concurrent 19-month prison sentence for the offense of fleeing police in a motor vehicle. This appeal follows.

**DECISION**

Stewart argues that the evidence is insufficient to prove beyond a reasonable doubt that he is guilty of possessing methamphetamine. When considering a sufficiency-of-the-evidence challenge, we carefully review the record to determine "whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Horst*, 880 N.W.2d 24, 40 (Minn. 2016) (quotation omitted). We assume that the jury "disbelieved any testimony conflicting with that verdict." *State v. Balandin*, 944 N.W.2d 204, 213 (Minn. 2020) (quotation omitted). And we will not overturn a conviction if the jury could have reasonably found the defendant guilty, giving due regard to the presumption of innocence and the burden of proof beyond a reasonable doubt. *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016).

To establish Stewart's guilt for first-degree possession of a controlled substance, the state had to prove that Stewart knowingly and unlawfully "possesse[d] one or more mixtures of a total weight of 50 grams or more containing . . . methamphetamine." Minn. Stat. § 152.021, subd. 2(a)(1) (2018); *State v. Florine*, 226 N.W.2d 609, 610 (Minn. 1975). "Possession may be proved through evidence of actual or constructive possession." *State v. Harris*, 895 N.W.2d 592, 601 (Minn. 2017). Actual possession is proved by showing an individual physically possessed an item. *See Florine*, 226 N.W.2d at 610 (stating that there

5

was no actual possession when there was clearly no evidence that the controlled substances found in an abandoned vehicle were physically possessed by the defendant). Constructive possession may be proved in two ways: (1) by showing that "the police found the [contraband] in a place under the defendant's exclusive control to which other people normally did not have access" or (2) by showing "that there is a strong probability (inferable from other evidence) that[,] at the time[,] the defendant was consciously or knowingly exercising dominion and control over [the contraband]." *Harris*, 895 N.W.2d at 601.

The state can prove actual or constructive possession through direct or circumstantial evidence. *See State v. German*, 929 N.W.2d 466, 472 (Minn. App. 2019). "Direct evidence is evidence based on personal knowledge or observation that, if true, proves a fact without inference." *State v. Olson*, 887 N.W.2d 692, 700 (Minn. App. 2016). Circumstantial evidence is "evidence from which the factfinder can infer whether the facts in dispute existed or did not exist." *Harris*, 895 N.W.2d at 599.

The parties do not dispute that circumstantial evidence was presented to establish Stewart's guilt. When reviewing the sufficiency of circumstantial evidence, we apply a heightened two-step standard of review. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012). Under the first step, the circumstances proved are identified. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). In this step, "we defer to the jury's acceptance of the proof of these circumstances" and "assume that the jury believed the State's witnesses and disbelieved the defense witnesses." *Id.* at 598-99 (quotations omitted).

Under the second step, we determine if the circumstances, when viewed "as a whole," are "consistent with guilt and inconsistent with any rational hypothesis except that of guilt, not simply whether the inferences that point to guilt are reasonable." *Id.* at 599 (quotation omitted). During this step, no deference is afforded the factfinder's choice between reasonable inferences. *State v. Andersen*, 784 N.W.2d 320, 329-30 (Minn. 2010). The circumstantial evidence presented by the state "must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted). A defendant's conviction will be sustained based on circumstantial evidence only if the circumstances proved are "consistent with a reasonable inference that the accused is guilty and inconsistent with any rational hypothesis except that of guilt." *Harris*, 895 N.W.2d at 601.

Here, the following circumstances were proved by the state: (1) Stewart was under surveillance by law enforcement because he was suspected of selling drugs; (2) while under surveillance, Stewart was observed leaving a garage, putting a tool bag in his vehicle, and then driving away; (3) when law enforcement attempted to stop Stewart, he looked back at the squad car and continued to drive; (4) during the pursuit, Stewart glanced several times to his right while reaching for something with this right hand until he reached his residence where he fled on foot; (5) when Stewart exited his vehicle upon arriving at his residence, the officer observed Stewart holding something in his hands and arms; (6) the officer chased Stewart around the building twice, and did not observe Stewart discard any items; (7) after chasing Stewart around his residential building, the officer entered the building

7

through its main door about a second or two behind Stewart; (8) because the officer heard thumping noises overhead, he ran upstairs where he collided with Stewart on a landing; (9) the stairwell was poorly lit and the officer struggled with Stewart for about 20 seconds, during which Stewart's right arm was close to the wall; (10) although no drugs were found on Stewart's person, law enforcement did find on Stewart, or near where he was apprehended, a large amount of cash and a "pay/owe sheet" consistent with drug sales; (11) in Stewart's vehicle, officers found a PVC pipe in a tool bag that contained plastic baggies consistent with the packaging of controlled substances; (12) Stewart made statements to law enforcement indicating that he was not carrying much methamphetamine, that he did not want to admit guilt, and that officers did not have to worry that children would find methamphetamine in the area around his residence; (13) a canine unit alerted near the wall where the officer struggled with Stewart, and two packages containing approximately 27 grams of methamphetamine each were discovered in the wall behind some loose paneling near where Stewart's right arm was during the struggle; and (14) after Stewart was told that the methamphetamine was discovered in the wall, Stewart indicated to law enforcement that he fled because of the methamphetamine.

Stewart agrees that a jury could find that the circumstances proved by the state are consistent with guilt on the element of possession. But Stewart contends that "[w]hen viewed as a whole, the circumstances proved do not preclude a reasonable inference that [he] did not possess the methamphetamine police found" because the "methamphetamine was indisputably found in a common area of the building where others had free access." We disagree.

8

In considering whether there is sufficient evidence to establish constructive possession, courts consider several factors. One factor is proximity. *State v. Smith*, 619 N.W.2d 766, 770 (Minn. App. 2000), *rev. denied* (Minn. Jan. 16, 2001). "Ease of access is . . . [another] factor relevant to establishing constructive possession, [but] it is not the sole factor or necessarily even the most important factor." *State v. Salyers*, 858 N.W.2d 156, 159 (Minn. 2015).

In this case, there are several factors that render unreasonable any inferences inconsistent with Stewart's guilt. For example, the methamphetamine was discovered in a location very close to a door to Stewart's residence. Given its proximity to an entrance to Stewart's residence, it is reasonable to infer that Stewart was aware of the loose paneling by the landing and that it would be a quick and easy place to stash contraband. And the location where the methamphetamine was discovered is compelling in light of Stewart's conduct during his flight from the officer; he ran around the building, but instead of entering his residence through an outside door, he chose to enter through the building's main door and then proceed upstairs. Stewart's path took him past the location where the contraband was discovered.

Moreover, the gap in the paneling provided Stewart with easy access to hide the methamphetamine behind the wall. The ease of access would have allowed Stewart to shove the methamphetamine behind the wall during his struggle with the officer on the landing. Or, because of Stewart's ability to stay ahead of the officer during the chase, the ease of access would have allowed Stewart to quickly stash the methamphetamine behind the wall before the officer caught up to Stewart.

In addition, the items found in Stewart's possession, such as the cash, "pay/owe sheet," and plastic baggies support the inference that Stewart was involved in the sale of controlled substances. And Stewart's suspicious conduct, such as his decision to flee from law enforcement, suggests consciousness of his own guilt. *See State v. Bias*, 419 N.W.2d 480, 485 (Minn. 1988) ("[E]vidence of flight suggests consciousness of guilt.").

Finally, and perhaps most importantly, Stewart's answers to law enforcement's leading questions support the conclusion that Stewart constructively possessed the methamphetamine. Law enforcement asked Stewart "how much [methamphetamine] he was carrying," to which he replied, "Not much." And when Stewart was interviewed after the methamphetamine was found in the wall, Steward replied, "Okay, good," when told by law enforcement that the methamphetamine had been located. Moreover, the sergeant testified that Stewart agreed that the methamphetamine found in the wall was the reason he fled. Stewart's statements to law enforcement, when considered with the other circumstances proved, form a complete chain that leads directly to Stewart's guilt and excludes beyond a reasonable doubt any reasonable inference other than guilt. Accordingly, there is sufficient evidence to support the jury's verdict.[1]

**Affirmed.**

---

[1] Because there is sufficient evidence demonstrating that Stewart constructively possessed the contraband, we need not address the state's argument that Stewart actually possessed the contraband.