*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0581**

State of Minnesota,
Respondent,

vs.

Brandon Christopher Seals,
Appellant.

**Filed February 1, 2016
Affirmed
Klaphake, Judge**[*]

Dakota County District Court
File No. 19HA-CR-14-2519

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James E. Backstrom, Dakota County Attorney, Stacy Ann St. George, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi Elstan Forte Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and Klaphake, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KLAPHAKE**, Judge

Appellant Brandon Seals challenges the sufficiency of the evidence underlying the district court's verdict convicting him of possession of a firearm by an ineligible person and possession of a firearm with a removed or altered serial number. Because the circumstantial evidence is sufficient to support the district court's finding that Seals constructively possessed the firearm, we affirm.

## DECISION

When reviewing a verdict, an appellate court considers whether the legitimate inferences drawn from the evidence would permit the fact-finder to conclude that the defendant was guilty beyond a reasonable doubt. *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012). Review is limited to a close analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the fact-finder to reach the verdict that it did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court must assume "the [fact-finder] believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). The reviewing court will not disturb the verdict if the fact-finder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offenses. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004). "[R]eview [of] criminal bench trials [is] the same as [that of] jury trials when determining whether the

evidence is sufficient to sustain convictions." *State v. Hough*, 585 N.W.2d 393, 396 (Minn. 1998).

The parties agree that the evidence establishing constructive possession in this case is circumstantial. An appellate court applies heightened scrutiny when reviewing a verdict based on circumstantial evidence. *Pratt*, 813 N.W.2d at 874. The circumstances proved must be consistent with guilt and inconsistent with any other rational hypothesis. *Id.* Minnesota courts employ a two-step process when reviewing convictions based on circumstantial evidence. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010). First, the reviewing court identifies the circumstances proved. *Id.* In doing so, the court views the evidence in the light most favorable to the verdict. *See Pratt*, 813 N.W.2d at 874 (stating that the supreme court had considered the evidence "in the light most favorable to the verdict" when determining the circumstances proved). The court defers to the fact-finder's acceptance and rejection of proof and to its credibility determinations. *Andersen*, 784 N.W.2d at 329; *see also State v. Hughes*, 749 N.W.2d 307, 312 (Minn. 2008) (stating that the fact-finder is "in the best position to weigh the credibility of the evidence and thus determine which witnesses to believe and how much weight to give their testimony").

Next, the reviewing court examines the reasonableness of the inferences that can be drawn from the circumstances proved, including inferences of innocence as well as guilt. *Andersen*, 784 N.W.2d at 329. All of the circumstances proved must be consistent with guilt and inconsistent with any other rational hypothesis negating guilt. *Id.* The reviewing court does not defer to the fact-finder's choice between rational hypotheses. *Id.* at 329-30. But appellate courts "view the circumstantial evidence as a whole, not as isolated facts."

*State v. Hurd*, 819 N.W.2d 591, 599 (Minn. 2012). And the "[s]tate does not have the burden of removing all doubt, but of removing all reasonable doubt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). A rational hypothesis negating guilt must be based on more than mere conjecture or speculation. *Id.* at 480; *Andersen*, 784 N.W.2d at 330.

"Possession of a firearm may be proved through actual or constructive possession." *State v. Salyers*, 858 N.W.2d 156, 159 (Minn. 2015).

> The purpose of the constructive-possession doctrine is to include within the possession statute those cases where the state cannot prove actual or physical possession at the time of arrest but where the inference is strong that the defendant at one time physically possessed [an item] and did not abandon his possessory interest in the [item] but rather continued to exercise dominion and control over it up to the time of the arrest.

*State v. Florine*, 303 Minn. 103, 104-05, 226 N.W.2d 609, 610 (1975). To prove constructive possession under the *Florine* test, "the [s]tate must show either (1) that the prohibited item was found 'in a place under defendant's exclusive control to which other people did not normally have access,' or (2) if the prohibited item was found 'in a place to which others had access, there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it.'" *Salyers*, 858 N.W.2d at 159 (quoting *Florine*, 303 Minn. at 105, 226 N.W.2d at 611). "Proximity is an important factor in establishing constructive possession" and "an item that is constructively possessed may be possessed by more than one person." *State v. Porte*, 832 N.W.2d 303, 308 (Minn. App. 2013) (quotation omitted). "An offender who place[s] a firearm where it is discovered has constructive possession of the firearm." *Salcido-Perez*

4

*v. State*, 615 N.W.2d 846, 846 (Minn. App. 2000), *review denied* (Minn. Sept. 13, 2000); *see also State v. Smith*, 619 N.W.2d 766, 770 (Minn. App. 2000) ("[A] defendant may constructively possess a firearm if he placed the firearm where it was discovered."), *review denied* (Minn. Jan. 16, 2001).

In this case, the evidence is clear that the gun was found in a place that was not under Seals's exclusive control and to which other people had access. Thus, the state had to prove, under the second prong of the *Florine* test, a "strong probability" that Seals was "consciously exercising dominion and control" over the gun. *See Florine*, 303 Minn. at 105, 226 N.W.2d at 611.

The circumstances proved include: (1) the van where the gun was found had three rows of seats; (2) Seals was sitting in the front passenger seat, A.E.—the vehicle's owner— was sitting in the driver's seat, and L.H. was sitting in the third row of seats; (3) police observed Seals in the vehicle bending forward and down, twisting his body, and looking around; (4) the gun was found under the second row of seats behind the front passenger seat; (5) the gun could not have been placed under the seat until shortly before the police discovered it because it would have slid around on the van floor had it been there while the vehicle was moving; (6) A.E. and L.H. were excluded as possible contributors to the DNA found on the gun; (7) Seals could not be excluded as a contributor to the DNA on the gun; (8) 85.8 percent of the general population could be excluded as contributors to the DNA on the handle of the gun, and 99 percent of the general population could be excluded as contributors to the DNA on the gun's trigger. These circumstances are consistent with the district court's conclusion that Seals placed the gun under the seat shortly before it was

discovered by police and thus consciously exercised dominion and control over it. *See Salcido-Perez*, 615 N.W.2d at 846.

Seals first argues that police observed him "bending forward and down," which he claims "is inconsistent with turning around and placing a gun under the seat." He also contends that there was a drawer under the front passenger seat, "making it impossible for [him] to slide the gun under his seat all the way to the second bench row seat." But the district court found, consistent with Sergeant Stoler's testimony, that in addition to bending forward and down, Seals was "twisting." And, although there was a drawer under Seals's seat, Sergeant Stoler testified that there was an open area with no center console between the two front seats. The circumstances proved are therefore consistent with the hypothesis that Seals leaned forward, twisted his body towards the driver's seat, and placed the gun under the second row of seats by reaching or sliding the gun through the empty area between the two front seats.

Seals next argues that the circumstances proved are consistent with the hypothesis that one of A.E.'s coworkers left the gun in the van earlier that day and that it was not discovered until the police searched the van. Seals acknowledges A.E.'s testimony that no one other than A.E., Seals, and L.H. were in the van that day and that he would have seen the gun had it been in the vehicle earlier in the day. But Seals states that the district court found A.E. generally not credible. Seals's argument ignores Sergeant Stoler's testimony and the district court's finding that Sergeant Stoler "believed the gun had recently been put under the van seat because, if it had been in that position for any length of time, it would have shifted around while the vehicle was moving." The district court clearly credited this

6

testimony and/or A.E.'s testimony because it found that "[t]he testimony was clear that the gun was placed under the middle seat of the van that evening. Only one, or more, of the three passengers in the van placed it under the middle seat." This court defers to the fact-finder's acceptance and rejection of proof and to its credibility determinations. *Andersen*, 784 N.W.2d at 329.

Seals also argues that "[A.E.] or [L.H.] placed the gun under the seat but their DNA profiles were not transferred because [A.E.] or [L.H.] wiped the gun to remove their DNA or their DNA was never on the gun because [A.E.] or [L.H.] handled the gun with a glove, shirt or other item that would not transfer their DNA." The forensic scientist could not say definitively that Seals's DNA was on the gun. It therefore is not beyond the realm of possibility that Seals never touched the gun and A.E. or L.H. placed the gun under the seat without transferring DNA. But, given Seals's furtive movements and the fact that Seals could not be excluded as a contributor to the DNA on the gun, while the two other individuals in the van and a very high percentage of the general population could be excluded, this theory is not rational. This scenario also seems improbable because Sergeant Stoler testified that L.H. was not making any abnormal movements in the vehicle and, although A.E. was moving, he was not reaching down and he was not moving as dramatically as Seals. "[P]ossibilities of innocence do not require reversal of a . . . verdict so long as the evidence taken as a whole makes such theories seem unreasonable." *State v. Taylor*, 650 N.W.2d 190, 206 (Minn. 2002) (quotation omitted).

Finally, Seals argues that L.H. was left unsupervised in the vehicle after Seals and A.E. were removed and was still in the vehicle when the officers discovered the gun. Seals

7

claims that L.H. could have hidden the gun during this period. But Sergeant Stoler and Officer Carlson testified, and the district court found, that all three men were removed from the vehicle before Officer Carlson conducted the search. Moreover, L.H. testified that the officers had all three men exit the van at the same time. Sergeant Stoler's testimony does suggest that there may have been a brief period of time that L.H. was alone and unsupervised in the van while Sergeant Stoler was pat searching Seals and Officer Carlson was asking A.E. for consent to search the vehicle. But it seems unlikely that this period was much longer than a few seconds. And, even if L.H. was left alone and unsupervised in the vehicle for a long enough period to hide the gun, the DNA evidence again makes this scenario extremely unlikely. This hypothesis also does not explain why Seals was making suspicious movements while L.H. was behaving normally.

Because the circumstances proved are consistent with the hypothesis that Seals constructively possessed the gun and inconsistent with any other rational hypothesis, we conclude that the evidence is sufficient to support Seals's convictions.

**Affirmed.**

8