*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1757**

State of Minnesota,
Respondent,

vs.

Claude Monroe Washington,
Appellant.

**Filed August 22, 2016
Affirmed
Hooten, Judge**

Hennepin County District Court
File No. 27-CR-14-12912

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Charles F. Clippert, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Hooten, Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

On appeal from his conviction of possession of a firearm by an ineligible person, appellant argues that (1) the district court committed plain error by failing to instruct the

jury as to the definition of the term "firearm" and (2) there was insufficient evidence to support his conviction. We affirm.

## FACTS

Appellant Claude Monroe Washington was charged by complaint with possession of a firearm by an ineligible person in violation of Minn. Stat. § 624.713, subd. 1(2) (2012). The following evidence was presented at trial.

At approximately 7:00 a.m. on May 6, 2014, law enforcement searched a Minneapolis residence owned by Washington pursuant to a search warrant. Upon executing the search warrant, the officers encountered Washington and two children, who were seven and eight years old, inside the house. The officers discovered that there were four bedrooms on the second level of the house: two bedrooms appeared to be children's bedrooms, one appeared to be vacant; and one bedroom in the northeast corner of the house appeared to be an adult's bedroom. Law enforcement believed that the northeast bedroom belonged to an adult because adult clothes, a large amount of cash, a condom, a cell phone, and a number of documents were found in the room. When searching the northeast bedroom, the officers discovered a loaded Ruger handgun on the floor underneath the bottom drawer of a dresser. A mailing addressed to Washington at the Minneapolis address was located on top of the dresser. Medical paperwork with Washington's name on it was also discovered in the bedroom. In the kitchen on the main floor of the house, the officers discovered a grocery bag with approximately 200 rounds of ammunition in it. The ammunition found in the kitchen could be fired from the gun found in the northeast bedroom.

2

After being arrested, Washington requested that law enforcement call his twin brother so that his brother could take custody of the children. Washington's twin brother, who lived nearby, arrived and took custody of the children.

The handgun and the magazine found inside the handgun were tested for DNA, and DNA was collected from Washington. Washington could not be excluded as a contributor to the sample found on the handgun, which was a mixture of three or more individuals, although 99.76% of the general population could be excluded. Additionally, Washington could not be excluded as a contributor to the sample found on the magazine, which was a mixture of four or more individuals, although 74.47% of the general population could be excluded.

Evidence presented at trial suggested that Washington and his twin brother are identical twins. Given current technology, identical twins have the same DNA profile. However, twins, regardless of whether they are fraternal or identical, do not have identical fingerprints.

A fingerprint recovered from the handgun matched Washington's fingerprint at 15 points. The print examiner who inspected the fingerprint testified that he would not expect to see a 15-point match between two prints that were not left by the same source. The examiner further testified that he would not expect an identical twin's fingerprint to be a 15-point match to the latent print found on the handgun.

At trial, Washington stipulated that he was ineligible to possess a firearm. A jury found Washington guilty of the offense following trial. The district court sentenced

Washington to the mandatory minimum sentence of 60 months in prison. *See* Minn. Stat. § 609.11, subd. 5(b) (2012). This appeal followed.

## D E C I S I O N

### I.

Washington argues that the district court erred by failing to instruct the jury as to the definition of the term "firearm" and that the error requires a new trial, even though he failed to request such an instruction.[1] Because Washington did not object to the jury instructions at the time of trial, we review for plain error. *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012). We apply a three-part test for plain error, which requires that there be (1) an error, (2) that is plain; and (3) that affects the defendant's substantial rights. *Id.* If these three prongs are met, an appellate court decides whether it "must address the error to ensure fairness and the integrity of the judicial proceedings." *Id.* (quotation omitted).

District courts have considerable latitude in selecting jury instructions, but jury instructions must "fairly and adequately explain the law." *Id.* (quotation omitted). If jury instructions confuse, mislead, or materially misstate the law, they are erroneous. *State v. Davis*, 864 N.W.2d 171, 176 (Minn. 2015).

The district court instructed the jury regarding the elements of the offense as follows: "[F]irst, the defendant knowingly possessed a firearm or consciously exercised dominion and control over it. Second, the defendant is ineligible to possess a firearm. . . .

---

[1] Whether the handgun discovered in Washington's residence was a firearm was not an issue at trial. In fact, Washington's trial counsel described the handgun as a "firearm" in closing arguments.

4

Third, the defendant's act took place on or about May 6th, 2014, in Hennepin County." Although the district court did not instruct the jury regarding the definition of "firearm," it instructed the jury that "[i]f I have not defined a word or phrase, you should apply the common, ordinary meaning of that word or phrase."

Washington argues that because possession of a firearm is an essential element of the crime of possession of a firearm by an ineligible person, it was error for the district court to fail to define the term "firearm." We agree. "Jury instructions must define the crime charged and explain the elements of the offense to the jury." *State v. Kjeseth*, 828 N.W.2d 480, 482 (Minn. App. 2013) (quotation omitted), *review denied* (Minn. June 18, 2013). But, "detailed definitions of the elements to the crime need not be given in the jury instructions if the instructions do not mislead the jury or allow it to speculate over the meaning of the elements." *Peterson v. State*, 282 N.W.2d 878, 881 (Minn. 1979).

Here, the state was required to prove beyond a reasonable doubt that Washington possessed a firearm. The term "firearm" is vague, as the meaning of "firearm" depends on the statute in which it appears. *See, e.g.*, Minn. Stat. § 97A.015, subd. 19 (2012) (providing that for purposes of chapters 97A, 97B, and 97C, "'[f]irearm' means a gun that discharges shot or a projectile by means of an explosive, a gas, or compressed air"); Minn. Stat. § 609.666, subd. 1(a) (2012) (stating that for purposes of negligent storage of firearms statute, "'[f]irearm' means a device designed to be used as a weapon, from which is expelled a projectile by the force of any explosion or force of combustion"); Minn. Stat. § 609.669, subd. 2(2) (2012) (defining "firearm" for purposes of civil disorder statute as "any weapon which is designed to or may readily be converted to expel any projectile by

5

the action of an explosive; or the frame or receiver of any such weapon"). The term "firearm," as it is used in Minn. Stat. § 624.713 (2012), is not defined by statute. *See* Minn. Stat. § 624.712 (2012) (providing applicable definitions for Minn. Stat. § 624.713). Because the district court did not explain the meaning of "firearm," the jury had to speculate over its meaning under Minn. Stat. § 624.713. Therefore, it was error for the district court not to instruct the jury on the definition of "firearm."

Next, we must determine whether the error was plain. An error is plain if it is "clear" or "obvious," meaning that it "contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (quotations omitted). Because the state is required to prove that a defendant was in knowing possession of a firearm within the meaning of "firearm" under Minn. Stat. § 624.713, and jury instructions must include all elements of the offense, we conclude that the district court's error was plain.

However, we conclude that the district court's failure to define "firearm" did not affect Washington's substantial rights. "An error affects a defendant's substantial rights if the error was prejudicial and affected the outcome of the case. An error in instructing the jury is prejudicial if there is a reasonable likelihood that giving the instruction in question had a significant effect on the jury's verdict." *State v. Watkins*, 840 N.W.2d 21, 28 (Minn. 2013) (citation and quotation omitted). In arguing that he was prejudiced by the district court's error, Washington claims that "[b]y definition a firearm expels a projectile by the force of any explosion or force of combustion. If the Ruger expelled a projectile using compressed air or a spring, it was not a firearm and Washington is not guilty." This is incorrect. There is no statutory definition of the term "firearm" as it is used in section

6

624.713. And, this court held in *State v. Fleming* that a BB gun which discharges shots by gas or compressed air constitutes a firearm under section 624.713. 724 N.W.2d 537, 540–41 (Minn. App. 2006). Washington presents no other argument regarding how he was prejudiced by the district court's failure to give an instruction regarding the definition of "firearm" or how the handgun was not a firearm within the meaning of section 624.713. Under these circumstances, Washington was not prejudiced by the district court's failure to define "firearm." We conclude that the district court's error in failing to give an instruction defining "firearm" did not affect Washington's substantial rights.

## II.

Washington argues that the state presented insufficient evidence to support his conviction of possession of a firearm by an ineligible person. "When considering a claim of insufficient evidence, this court conducts a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach a verdict of guilty." *State v. Porte*, 832 N.W.2d 303, 307 (Minn. App. 2013) (quotation omitted).

"Possession of a firearm may be proved through actual or constructive possession." *State v. Salyers*, 858 N.W.2d 156, 159 (Minn. 2015). Actual possession requires "proof that [the defendant] physically had the [firearm] on his person." *State v. Smith*, 619 N.W.2d 766, 770 (Minn. App. 2000), *review denied* (Minn. Jan. 16, 2001). Here, while the state presented evidence that Washington's fingerprint was found on the handgun, the state cannot prove actual possession of the handgun at the time of his arrest. Therefore, we must

7

determine whether the state presented sufficient evidence to prove that Washington constructively possessed the handgun.

The constructive-possession doctrine includes possession of a firearm by an ineligible person cases where the state cannot prove the defendant's actual possession of a firearm at the time of arrest but the inference is strong that the defendant at one time physically possessed the firearm and did not abandon his possessory interest in it. *Salyers*, 858 N.W.2d at 159. Constructive possession may be established by showing either

> (1) that the prohibited item was found "in a place under defendant's exclusive control to which other people did not normally have access," or (2) if the prohibited item was found "in a place to which others had access, there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it."

*Id.* (quoting *State v. Florine*, 303 Minn. 103, 105, 226 N.W.2d 609, 611 (1975)). "Proximity is an important consideration in assessing constructive possession," and "constructive possession need not be exclusive, but may be shared." *Smith*, 619 N.W.2d at 770.

In reviewing a conviction based on circumstantial evidence, we apply a two-part test. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). Under the first step, we identify the circumstances proved, deferring "to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the [s]tate." *Id.* at 598–99 (quotation omitted). In other words, we consider "only those circumstances that are consistent with the verdict." *Id.* at 599. Viewed in the light most favorable to the verdict, the state proved the following circumstances relevant

8

to constructive possession: Washington owned the home that was searched by the police, and the handgun was discovered in the home when the search warrant was executed at approximately 7:00 a.m. Out of the four bedrooms in the house, only the northeast bedroom appeared to be occupied by an adult, as adult clothes, a large amount of cash, a condom, a cell phone, and documents with Washington's name on them were found in the room. Washington was the only adult found inside the house. A loaded Ruger handgun was found on the floor underneath the bottom drawer of a dresser in the northeast bedroom. The dresser under which the handgun was found was located approximately two feet away from the bed. A mailing addressed to Washington at the Minneapolis address was found on top of the same dresser where the handgun was found. Approximately 200 rounds of ammunition were found in a grocery bag in a cabinet in the kitchen on the main floor of the house. The ammunition found in the kitchen could be fired from the gun found in the northeast bedroom. Although 99.76% of the general population could be excluded as contributors to the DNA mixture found on the handgun, Washington could not be. Although 74.47% of the general population could be excluded as contributors to the DNA mixture found on the magazine found in the handgun, Washington could not be. A fingerprint recovered from the handgun was a 15-point match to Washington. Neither fraternal nor identical twins have identical fingerprints.

Under the second step, we "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt. We review the circumstantial evidence not as isolated facts, but as a whole." *Id.* (quotations and citation omitted). Washington argues that the circumstances proved support a

9

reasonable hypothesis other than his guilt: Washington's twin brother, who listed the Minneapolis residence as his address on his driver's license, hid the handgun under the dresser and Washington did not know it was there. The entirety of the record, however, does not support this theory as a reasonable hypothesis other than guilt. The circumstances proved show that a fingerprint that was a 15-point match to Washington was found on the handgun and that such a level of similarity would not be expected to be found between two prints that were not left by the same source, the handgun was found approximately two feet from the bed in the only occupied adult bedroom in the home owned by Washington, and approximately 200 rounds of ammunition that could be fired from the handgun were found on the ground floor of the home. Washington's proffered alternate hypothesis is inconsistent with these circumstances proved and does not reasonably support a rational hypothesis other than that of guilt. We conclude that the evidence presented at trial was sufficient to prove that Washington constructively possessed the handgun.

**Affirmed.**